UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MASHREQBANK, PSC,<br><br>                    Plaintiff,<br><br>              v.<br><br>ING GROEP N.V., ING INVESTMENT<br>MANAGEMENT COMPANY a/k/a ING<br>INVESTMENT MANAGEMENT U.S.,<br>ING MANAGED ACCOUNT GROUP or<br>ING INVESTMENT MANAGEMENT<br>AMERICAS, RICHARD KILBRIDE, and<br>DOES 1-10 inclusive,<br><br>                  Defendants. | No. 13-cv- 02318 (LGS)<br><br>ECF Case |

### DEFENDANTS' MEMORANDUM OF LAW
### IN SUPPORT OF THEIR MOTION TO DISMISS

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................... 1

FACTUAL ALLEGATIONS ........................................................................................... 3

ARGUMENT .................................................................................................................. 5

I.  Mashreq's Claims Are Time-Barred Due to Its Failure to Timely Object to the Transactions at Issue .......................................................................................... 6

II.  The New York Borrowing Statute Bars Mashreq's Breach of Fiduciary Duty and Fraud Claims ................................................................................................. 9

III.  Mashreq's Breach of Contract Claim Should Be Dismissed ........................... 11

IV.  Mashreq's Fraud Claim Should Be Dismissed ............................................... 16

      A.  Mashreq Has Failed to Allege Any Actionable, Non-Duplicative Misstatements or Omissions ................................................................. 16

      B.  Mashreq Has Failed to Allege Scienter ................................................ 19

      C.  Mashreq Has Failed to Allege Fraud as to Defendant Richard Kilbride ............. 21

      D.  Mashreq Cannot Recover Lost Profits for Fraud .................................. 22

V.  Mashreq's Breach of Fiduciary Duty and Fraud Claims Are Duplicative of Mashreq's Breach of Contract Claim ............................................................... 23

VI.  Mashreq's Demand for Punitive Damages Should Be Stricken ...................... 24

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*AIM Int'l Trading, L.L.C.* v. *Valcucine S.P.A.*,
No. 02 Civ. 1363 (PKL), 2003 WL 21203503 (S.D.N.Y. May 22, 2003)..............................10

*Arthur Props., S.A.* v. *ABA Gallery, Inc.*,
No. 11 Civ. 4409 (LAK), 2011 WL 5910192 (S.D.N.Y. Nov. 28, 2011) ..............................19

*Ashcroft* v. *Iqbal*,
556 U.S. 662 (2009).............................................................................................................5

*Assured Guar. (UK) Ltd.* v. *J.P. Morgan Inv. Mgmt. Inc.*,
915 N.Y.S.2d 7 (1st Dep't 2010), *aff'd*, 962 N.E.2d 765 (N.Y. 2011).....................................6

*Bell Atl. Corp.* v. *Twombly*,
550 U.S. 544 (2007)...................................................................................................1, 5, 21

*Bouley* v. *Bouley*,
797 N.Y.S.2d 221 (4th Dep't 2005).....................................................................................11

*Cafferty* v. *Scotti Bros. Records, Inc.*,
969 F. Supp. 193 (S.D.N.Y. 1997).........................................................................................9

*Chambers* v. *Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)..............................................................................................8, 14

*Citibank, N.A.* v. *Morgan Stanley & Co.*,
797 F. Supp. 2d 254 (S.D.N.Y. 2011)...................................................................................13

*In re CitiGroup Inc. Bond Litig.*,
723 F. Supp. 2d 568 (S.D.N.Y. 2010)...................................................................................13

*In re Citigroup Inc. Sec. Litig.*,
753 F. Supp. 2d 206 (S.D.N.Y. 2010)...................................................................................13

*Clark-Fitzpatrick, Inc.* v. *Long Island R.R. Co.*,
516 N.E.2d 190 (N.Y. 1987)................................................................................................23

*Diffley* v. *Allied Signal, Inc.*,
921 F.2d 421 (2d Cir. 1990)...................................................................................................9

*Eaves* v. *Design for Fin., Inc.*,
785 F. Supp. 2d 229 (S.D.N.Y. 2011)...................................................................................21

*Ellington Credit Fund, LTD.* v. *Select Portfolio Servicing, Inc.*,
837 F. Supp. 2d 162 (S.D.N.Y. 2011)...................................................................................23

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Ferring B.V.* v. *Allergan, Inc.*,
No. 12 Civ. 2650, 2013 WL 1144878 (S.D.N.Y. Mar. 19, 2013) ..........................................19

*Fishbaum* v. *Liz Claiborne, Inc.*,
No. 98-9396, 1999 WL 568023 (2d Cir. July 27, 1999).......................................................18

*Fraternity Fund Ltd.* v. *Beacon Hill Asset Mgmt., LLC*,
479 F. Supp. 2d 349 (S.D.N.Y. 2007)....................................................................................18

*Garza* v. *Marine Transp. Lines, Inc.*,
861 F.2d 23 (2d Cir. 1988).....................................................................................................14

*Gearren* v. *McGraw-Hill Cos.*,
690 F. Supp. 2d 254 (S.D.N.Y. 2010), *aff'd*, 660 F.3d 605 (2d Cir. 2011) ...........................13

*Global Fin. Corp.* v. *Triarc Corp.*,
715 N.E.2d 482 (N.Y. 1999)...................................................................................................10

*Goldner* v. *Possilico*,
776 N.Y.S.2d 818 (2d Dep't 2004).........................................................................................25

*Guilbert* v. *Gardner*,
480 F.3d 140 (2d Cir. 2007)....................................................................................................23

*Harsco Corp.* v. *Segui*,
91 F.3d 337 (2d Cir. 1996)......................................................................................................11

*Hornstein* v. *Negev Airbase Constructors*,
488 N.Y.S.2d 435 (2d Dep't 1985)...........................................................................................6

*Hotel Emps. & Rest. Emps. Union Local 100* v. *City of N.Y. Dep't of Parks & Recreation*,
311 F.3d 534 (2d Cir. 2002).....................................................................................................2

*Huen N.Y., Inc.* v. *Bd. of Educ. Clinton Cent. Sch. Dist.*,
890 N.Y.S.2d 748 (4th Dep't 2009)........................................................................................14

*IDT Corp.* v. *Morgan Stanley Dean Witter & Co.*,
907 N.E.2d 268 (N.Y. 2009)............................................................................................10, 11

*Ins. Co. of N. Am.* v. *ABB Power Generation, Inc.*,
690 N.E.2d 1249 (N.Y. 1997)...................................................................................................9

*Lama Holding Co.* v. *Smith Barney Inc.*,
668 N.E.2d 1370 (N.Y. 1996).................................................................................................22

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Lerner* v. *Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006)................................................................19

*Leslie* v. *Minson*,
   679 F. Supp. 280 (S.D.N.Y. 1988)......................................................18

*Lopez* v. *845 WEA Mgmt. Inc.*,
   No. 11 Civ. 281 (TPG), 2012 WL 661687 (S.D.N.Y. Feb. 29, 2012)....................9

*Loreley Fin. (Jersey) No. 3 Ltd.* v. *Wells Fargo Sec. LLC*,
   No. 12 Civ. 3723 (RJS), 2013 WL 1294668 (S.D.N.Y. Mar. 28, 2013) ...............21

*Marketxt Holdings Corp.* v. *Engel & Reiman, P.C.*,
   693 F. Supp. 2d 387 (S.D.N.Y. 2010)..................................................11

*In re Merrill Lynch Auction Rate Sec. Litig.*,
   851 F. Supp. 2d 512 (S.D.N.Y. 2012)..............................................13, 20

*Morgan* v. *A.O. Smith Corp.*,
   697 N.Y.S.2d 152 (2d Dep't 1999)......................................................23

*Murray* v. *Cunard S.S. Co.*,
   139 N.E. 226 (N.Y. 1923).................................................................6

*New World Trading Co.* v. *Avshalomov*,
   No. 11 Civ. 6219 (SAS), 2012 WL 4378055 (S.D.N.Y. Sept. 24, 2012)..............24

*New York Univ.* v. *Cont'l Ins. Co.*,
   662 N.E.2d 763 (N.Y. 1995)..............................................................25

*Nguyen* v. *Radient Pharm. Corp.*,
   No. SA CV 11-0406 DOC, 2011 WL 5041959 (C.D. Cal. Oct. 20, 2011) ............8

*O'Brien* v. *Nat'l Prop. Analysts Partners*,
   936 F.2d 674 (2d Cir. 1991).............................................................19

*Olsen* v. *Pratt & Whitney Aircraft*,
   136 F.3d 273 (2d Cir. 1998).............................................................16

*Patsy's Italian Rest.* v. *Banas*,
   575 F. Supp. 2d 427 (E.D.N.Y. 2008) ...................................................2

*Pension Benefit Guar. Corp.* v. *Morgan Stanley Inv. Mgmt.*,
   712 F.3d 705 (2d Cir. 2013).............................................................15

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Physicians Mut. Ins. Co.* v. *Greystone Servicing Corp.*,
    No. 07 Civ. 10490 (NRB), 2009 WL 855648 (S.D.N.Y. Mar. 25, 2009)...............................23

*Robb Evans & Assocs. L.L.C.* v. *Sun Am. Life Ins.*,
    No. 10 Civ. 5999, 2012 WL 488257 (S.D.N.Y. Feb. 14, 2012) .............................................10

*Ronnen* v. *Ajax Elec. Motor Corp.*,
    671 N.E.2d 534 (N.Y. 1996)...............................................................................................13

*Ross* v. *Louise Wise Servs., Inc.*,
    868 N.E.2d 189 (N.Y. 2007)...............................................................................................16

*Saltz* v. *First Frontier, LP*,
    782 F. Supp. 2d 61 (S.D.N.Y. 2010), *aff'd*, 485 F. App'x 461 (2d Cir. 2012).......................20

*Sansal* v. *Paschal*,
    No. 10 Civ. 8417 (JPO), 2012 WL 4336171 (S.D.N.Y. Sept. 12, 2012)...............................11

*Seippel* v. *Jenkens & Gilchrist, P.C.*,
    341 F. Supp. 2d 363 (S.D.N.Y. 2004), *amended on reconsideration on other grounds*,
    No. 03 Civ. 6942 (SAS), 2004 WL 2403911 (S.D.N.Y. Oct. 26, 2004) ...............................10

*Staehr* v. *Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008)...................................................................................................9

*Stolow* v. *Greg Manning Auctions, Inc.*,
    258 F. Supp. 2d 236 (S.D.N.Y.), *aff'd*, 80 F. App'x 722 (2d Cir. 2003)...............................18

*Stuart* v. *Am. Cyanamid Co.*,
    158 F.3d 622 (2d Cir. 1998)...................................................................................................9

*Teamsters Local 617 Pension & Welfare Funds* v. *Apollo Grp. Inc.*,
    No. 06-02674-PHX-RCB, 2011 WL 1253250 (D. Ariz. Mar. 31, 2011) ...............................8

*Ulico Cas. Co.* v. *Wilson, Elser, Moskowitz, Edelman & Dicker*,
    865 N.Y.S.2d 14 (1st Dep't 2008) .......................................................................................24

*Welch* v. *TD Ameritrade Holding Corp.*,
    No. 07 Civ. 6904 (RJS), 2009 WL 2356131 (S.D.N.Y. July 27, 2009) ...............................22

*William Kaufman Org., Ltd.* v. *Graham & James LLP*,
    703 N.Y.S.2d 439 (1st Dep't 2000) .....................................................................................23

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Woori Bank* v. *Citigroup Inc.*,
No. 12 Civ. 3868 (LTS), 2013 WL 1235648 (S.D.N.Y. Mar. 27, 2013)................................13

*Woori Bank* v. *Merrill Lynch*,
No. 12 Civ. 3993 (VM), 2013 WL 449912 (S.D.N.Y. Feb. 6, 2013)....................................10

*Woori Bank* v. *RBS Sec., Inc.*,
No. 12 Civ. 4254 (HB), 2012 WL 6703352 (S.D.N.Y. Dec. 27, 2012) ................................13

**STATUTES**

15 U.S.C. § 78c(a)(79)........................................................................................................13

28 U.S.C. § 1332.................................................................................................................9

N.Y. C.P.L.R. § 201............................................................................................................6

N.Y. C.P.L.R. § 202............................................................................................................9

N.Y. C.P.L.R. § 213(8)........................................................................................................11

**OTHER AUTHORITIES**

Article 298 of the UAE Law of Civil Transactions ...................................................................10

Federal Rule of Civil Procedure 9(b)............................................................................16, 21, 22

Federal Rule of Civil Procedure 12(b)(6) ..............................................................................5

Federal Rule of Civil Procedure 44.1 ....................................................................................10

Federal Rule of Evidence 201(f)............................................................................................2

Satyajit Das, *Discourse About Leverage*, EconoMonitor (Apr. 14, 2009),
http://www.economonitor.com/blog/2009/04/discourse-about-leverage/ ..............................14

## PRELIMINARY STATEMENT

In this action, plaintiff MashreqBank, psc ("Mashreq") seeks to rewrite the terms of its investment agreement with defendant ING Investment Management Co. ("ING"),[1] and to compel ING to act as the guarantor for its investments.  This is a right for which Mashreq never bargained, and an obligation that ING never undertook.

Mashreq opened its investment account with ING in 2005.  ING initially employed a conservative investment strategy designed to generate steady, but moderate, returns. That was not enough for Mashreq.  In late 2006, Mashreq pressed ING to pursue a more aggressive and riskier strategy aimed at generating higher returns.  As a result, Mashreq and ING negotiated a revision of the account's investment guidelines that expressly authorized ING to purchase a wider range of securities, including various asset-backed securities.  Pursuant to these guidelines, ING purchased for Mashreq's account—among other securities—11 collateralized debt obligations ("CDOs") and collateralized loan obligations ("CLOs"),[2] each of which ING duly and promptly reported in monthly account statements emailed to Mashreq.

Mashreq is no ingénue.  It describes itself as "one of the [United Arab Emirates' ('UAE's')] leading financial institutions," having "provided banking and financial services to millions of customers and businesses" for nearly half a century.  (*See* Declaration of Daniel J. Toal in Support of Defendants' Motion to Dismiss the Complaint ("Toal Decl."), Ex. A, at 1,

---

[1]  Effective December 31, 2011, ING became ING Investment Management Co. LLC.  In addition, to the extent Mashreq brings claims against "ING Managed Account Group or ING Investment Management Americas," any such claims should be dismissed, as there is no such corporate entity by either of those names.

[2]  Defendants assume for the purpose of this motion, but do not concede, that—consistent with Mashreq's allegations—the 11 securities at issue are CDOs and CLOs.  (*E.g.*, ¶¶ 63, 66-72, 76-77, 82, 84-85.)  *See Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555-56 (2007).  Citations in the form of "¶ __" refer to paragraphs in the complaint.  Citations in the form of "Ex. __" refer to exhibits attached to the complaint.

dated May 31, 2013; *see also id.*, Ex. A, at 2-7.)[3]  Given its admitted financial sophistication, Mashreq unquestionably understood that investments in the securities markets entail risk of loss. Mashreq nonetheless claims that it *never* would have invested with ING had it known that ING planned to purchase CDOs and CLOs for its account, notwithstanding that it agreed to revisions of the applicable investment guidelines that permitted the purchase of such securities.  Mashreq also insists that for months it remained oblivious to the purchase of these securities, despite admitting that it received regular reports from ING listing such transactions.  And even though it now describes these securities as "toxic," Mashreq concedes that it continued to hold them for another *three years* after its supposedly "shocking" discovery of them and that it then waited almost *three more years* to bring these claims.

Mashreq now asserts claims for breach of contract and breach of fiduciary duty against ING and ING's parent corporation, ING Groep, N.V. ("ING Groep"), and for common-law fraud against ING, ING Groep and ING employee Richard Kilbride.[4]  All three claims suffer from multiple fatal deficiencies and thus should be dismissed as a matter of law.

*First*, all of Mashreq's claims are time-barred because Mashreq failed timely to object to the challenged securities' purchases, as required by the express terms of the parties' investment agreement.

*Second*, New York's "borrowing statute" compels the application of the UAE's

---

[3]   The Court may take judicial notice "at any stage of the proceeding."  Fed. R. Evid. 201(f).  Judicial notice of information on Mashreq's own website is appropriate.  *See, e.g.*, *Hotel Emps. & Rest. Emps. Union Local 100* v. *City of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 549 (2d Cir. 2002) (taking judicial notice of information on website, the authenticity of which was not questioned); *Patsy's Italian Rest.* v. *Banas*, 575 F. Supp. 2d 427, 443 n.18 (E.D.N.Y. 2008) ("It is generally proper to take judicial notice of articles and [w]eb sites published on the [i]nternet." (citations omitted)).

[4]   On May 21, 2013, Mashreq and ING Groep entered into a stipulation of dismissal as to ING Groep.  The Court approved the parties' stipulation on May 22, 2013, and dismissed ING Groep from this action.

three-year statute of limitations to Mashreq's breach of fiduciary duty and fraud claims. As Mashreq did not bring those claims within three years, both are time-barred.

*Third*, Mashreq's breach of contract claim should be dismissed because Mashreq fails plausibly to allege a breach of the parties' investment guidelines since, among other things, the guidelines plainly permitted the purchases of the CDOs and CLOs at issue.

*Fourth*, Mashreq's fraud claim should be dismissed because it fails plausibly to allege either actionable misrepresentations or scienter. In addition, Mashreq's fraud claim against Mr. Kilbride should be dismissed because Mashreq fails to allege with particularity any fraudulent conduct specifically creditable to him. This claim also should be dismissed to the extent that it seeks lost profits, which are not recoverable for fraud.

*Fifth*, Mashreq's breach of fiduciary duty and fraud claims should be dismissed because they are duplicative of Mashreq's breach of contract claim.

*Sixth*, assuming the breach of fiduciary duty and fraud claims are dismissed, Mashreq's demand for punitive damages should be stricken because a breach of contract claim cannot support a punitive damages award.

## FACTUAL ALLEGATIONS

Mashreq is a UAE-based financial institution that "provides banking and financial services to millions of individuals and businesses." (¶ 15.) ING is a U.S.-based asset management firm. (¶ 17.) On February 28, 2005, Mashreq and ING entered into an Investment Management Agreement (the "Investment Agreement") pursuant to which Mashreq "appoint[ed] [ING] to manage the portion of its assets in an account established with [ING]." (Ex. 1, at 1 § 1; *see* ¶¶ 27, 38.)

The Investment Agreement provided that ING would manage Mashreq's

investment portfolio subject to written Investment Guidelines, which Mashreq could "from time to time amend." (Ex. 1, at 1-2 § 2(a), (d).) The first set of amended guidelines expressly permitted the purchase of, among other things, "mortgage and other asset backed securities [and] collateralized mortgage backed obligations." (Ex. 1, at 13 § 5.) "[S]ecurities with embedded leverage," however, were listed as "Prohibited Investments." (Ex. 1, at 13 § 6.) The Investment Agreement further provided that "[a]ll transactions effected for the Account will be deemed to be in compliance with the Investment Guidelines unless written notice to the contrary is received by [ING] from [Mashreq] within 30 days following the first issue of the periodic report containing such transactions." (Ex. 1, at 2 § 2(d).) By its express terms, the Investment Agreement "contains the entire agreement between the parties" and "may not be amended or modified in any respect without the written concurrence of both parties." (Ex. 1, at 5 § 12.) Furthermore, the parties agreed that the agreement "shall be governed by and construed under the laws of the State of New York without regard to choice of law principles." (Ex. 1, at 5 § 13.)

In November 2006, various ING employees met with Mashreq to discuss new investment strategies for Mashreq's portfolio, including investing in CDOs, CLOs and collateralized bond obligations. (¶¶ 39, 45.) As reflected in a presentation delivered at that meeting, ING clearly represented that CDOs were a subset of the "Asset Backed" sector of the fixed income market. (Ex. 4, at 4.) Following that meeting, the parties agreed to a new set of amended guidelines dated February 5, 2007 (the "Investment Guidelines" or the "Guidelines"). (¶ 38.) The Investment Guidelines continued to list "mortgage and other asset backed securities [and] collateralized mortgage backed obligations" as "Permitted Securities." (Ex. 2, at 1 § 4.) The list of "Prohibited Investments" was changed, however. In particular, the revised Investment Guidelines deleted the prohibition on "securities with embedded leverage" and added

a prohibition on "subordinated bank debt." (Ex. 2, at 1 § 5.)

Between February and July 2007, ING invested Mashreq in, among other things, 11 separate CDOs and CLOs. (¶¶ 58-59, 90.) ING promptly reported those investments in periodic reports issued to Mashreq over that same period of time, each of which allegedly was classified as "ABS," or asset-backed securities. (¶ 61.) At no point during that period of time did Mashreq object—in writing or otherwise—to the CDO or CLO investments. Mashreq claims to have discovered that the 11 securities at issue were CDOs and CLOs during a conference call on July 31, 2007, (*id.*), and the first written communication that it alleges it sent to ING raising issues with these investments is an email dated August 29, 2007, (¶ 70). In that email, Mashreq claimed that the parties had "verbally agreed that CDO/CLO tranches would not be permissible," and that the investments violated this purported verbal agreement. (*Id.*)

After well more than five years of inactivity, Mashreq filed the instant lawsuit. Mashreq asserts causes of action for breach of contract and breach of fiduciary duty against ING, and common-law fraud against ING and Mr. Kilbride (the "Defendants"). Mashreq claims to have suffered investment losses on these securities of approximately $43 million. (¶ 153.)

## ARGUMENT

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A complaint is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff must provide more than mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

I. **MASHREQ'S CLAIMS ARE TIME-BARRED DUE TO ITS FAILURE TO TIMELY OBJECT TO THE TRANSACTIONS AT ISSUE**

      All of Mashreq's claims are untimely because Mashreq failed to object in writing to the transactions at issue within the time prescribed by the Investment Agreement.

      Under New York law, contractually shortened limitations periods are expressly authorized by statute.  *See* N.Y. C.P.L.R. § 201.  Under that provision, "[t]here is no question that parties may agree to a statute of limitations shorter than that set forth in the [C.P.L.R.], provided that the agreement is in writing and the shortened period is reasonable."  *Assured Guar. (UK) Ltd.* v. *J.P. Morgan Inv. Mgmt. Inc.*, 915 N.Y.S.2d 7, 15 (1st Dep't 2010), *aff'd*, 962 N.E.2d 765 (N.Y. 2011).  The parties here expressly agreed to a shortened limitations period. Section 2(d) of the Investment Agreement provided that "[a]ll transactions effected for the Account will be deemed to be in compliance with the Investment Guidelines unless written notice to the contrary is received by [ING] from Client within 30 days following the first issue of the periodic report containing such transactions."  (Ex. 1, at 2, § 2(d).)  Contractual limitations periods of similar duration have been recognized as reasonable under New York law.  *See Hornstein* v. *Negev Airbase Constructors*, 488 N.Y.S.2d 435, 436 (2d Dep't 1985); *cf. Murray* v. *Cunard S.S. Co.*, 139 N.E. 226, 228 (N.Y. 1923) (Cardozo, J.) (40-day period); *Assured Guar.*, 915 N.Y.S.2d at 15 (90-day period).  Section 14 of the Investment Agreement required written notice to "be given at the address set forth on the first page" of the agreement.  (Ex. 1, at 6, § 14.) ING's address was listed as "230 Park Avenue, New York, NY 10169."  (Ex. 1, at 1.)

      In this action, Mashreq contends that ING's purchase of 11 CDO and CLO securities for Mashreq's portfolio violated the terms of the Investment Guidelines.  Mashreq does not allege, however, that it objected to any of those supposedly non-conforming transactions within the 30-day limitations period to which it agreed in Section 2(d), much less that it did so in

6

accordance with Section 14's notice requirements.  As a result, each of the 11 CDOs and CLOs was "deemed to be in compliance with the Investment Guidelines" under Section 2(d). Mashreq's claims based on the purchase of those securities are therefore untimely, and subject to dismissal as a matter of law.

Even assuming—contrary to fact—that Mashreq had provided valid written notice to ING, Mashreq's claims would still be untimely as to 10 of the 11 securities.  The first written communication Mashreq claims to have sent ING that could conceivably be construed as an objection—albeit one that failed to comply with Section 14's notice requirements—was an email dated August 29, 2007.  (¶ 70.)  Ten of the 11 securities about which Mashreq complains, however, were disclosed to Mashreq in monthly statements that ING emailed to Mashreq more than 30 days before August 29, 2007, as reflected in the chart below.

| Security | Date of Purchase | Date of Monthly Statement Reflecting Purchase | Date of Purported Objection | Number of Days Elapsed |
|---|---|---|---|---|
| Sigma Finance Corp. | 2/8/2007 | 3/13/2007 | 8/29/2007 | **169 days** |
| Madison Park Funding Ltd. | 2/9/2007 | 3/13/2007 | 8/29/2007 | **169 days** |
| Commercial Industrial Finance | 2/15/2007 | 3/13/2007 | 8/29/2007 | **169 days** |
| Emporia Preferred Funding | 2/15/2007 | 3/13/2007 | 8/29/2007 | **169 days** |
| Taberna Preferred Funding Ltd. | 3/8/2007 | 4/18/2007 | 8/29/2007 | **133 days** |
| Liberty Harbor CDO Ltd. | 3/22/2007 | 4/18/2007 | 8/29/2007 | **133 days** |
| Libertas Preferred Funding Ltd. | 3/28/2007 | 4/18/2007 | 8/29/2007 | **133 days** |
| Harch CLO Ltd. | 4/16/2007 | 5/18/2007 | 8/29/2007 | **103 days** |
| Galena CDO Ltd. | 5/2/2007 | 6/8/2007 | 8/29/2007 | **82 days** |
| Fraser Sullivan CLO Ltd. | 6/27/2007 | 7/18/2007 | 8/29/2007 | **42 days** |

This chart[5] confirms that, as to 10 of the 11 CDO and CLO purchases that it now

---

[5]     All of the data contained in the chart is available in the account statements that ING attached to emails sent to Mashreq employees.   (Toal Decl., Exs. B-G.)   The account statements are incorporated into Mashreq's

seeks to challenge, Mashreq failed to send ING any written objection within 30 days after receiving the monthly statement reflecting the purchase of the security in question.   As evidenced from the text of the documents themselves, ING emailed monthly statements listing these transactions directly to at least five different employees at Mashreq.  (*See* Toal Decl., Ex. B, at 1; Ex. C, at 1; Ex. D, at 1; Ex. E, at 1; Ex. F, at 1; Ex. G, at 1.)  To the extent Mashreq claims that it could not have objected within the Investment Agreement's limitations period because the Defendants somehow "concealed the true nature" of the securities at issue, (¶ 60), Mashreq overlooks not only that the Investment Agreement contains no discovery provision, but also that the account statements that ING emailed to Mashreq clearly identified certain of the 11 securities at issue as CDOs or CLOs, (*see* Toal Decl., Ex. C, at 6; Ex. D, at 5; Ex. E, at 7; Ex. F, at 3, 5; Ex. G, at 3), and that all of the account statements provided the CUSIP and name for each portfolio security, (*see id.*, Ex. B, at 3, 7; Ex. C, at 2, 6; Ex. D, at 3, 5; Ex. E, at 5, 7; Ex. F, at 3, 5; Ex. G, at 3, 5).  This data would have allowed Mashreq readily to obtain any information about the securities at issue.  Indeed, simply inputting a security's CUSIP into a Bloomberg terminal, for instance, would have clearly identified such security as a CDO or a CLO—the very information that Mashreq now insists was somehow concealed from it.  (*See id.*, Ex. H.)[6]

As a result, Mashreq's effort to challenge ING's purchase of these CDO and CLO securities is untimely under the express terms of the Investment Agreement, and should be

---

complaint by reference.  (*E.g.*, ¶¶ 6, 60, 88, 90-91.)  As such, the Court may consider them on a motion to dismiss.  *See Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

[6]    The Court may take judicial notice of the Bloomberg terminal printouts attached to the Toal Declaration.  *See Teamsters Local 617 Pension & Welfare Funds* v. *Apollo Grp. Inc.*, No. 06-02674-PHX-RCB, 2011 WL 1253250, at *1 n.3 (D. Ariz. Mar. 31, 2011) ("In accordance with Fed. R. Evid. 201, the court also takes judicial notice of the 'print out from Bloomberg Finance L.P., documenting the market price of Apollo's common stock from January 2, 2003 until August 31, 2004.'"); *see also Nguyen* v. *Radient Pharm. Corp.*, No. SA CV 11-0406 DOC, 2011 WL 5041959, at *2 n.3 (C.D. Cal. Oct. 20, 2011) (taking judicial notice of stock pricing information from Bloomberg).

dismissed as a matter of law.

## II.     THE NEW YORK BORROWING STATUTE BARS MASHREQ'S BREACH OF FIDUCIARY DUTY AND FRAUD CLAIMS

Mashreq's breach of fiduciary duty and fraud claims are also time-barred because Mashreq failed timely to assert them under the New York borrowing statute, which here requires application of the statutes of limitations of the UAE.[7]

Where, as here, the basis for this Court's subject-matter jurisdiction is diversity of citizenship, *see* 28 U.S.C. § 1332; (¶ 24), New York's statutes of limitations apply, *see Diffley v. Allied Signal, Inc.*, 921 F.2d 421, 423 (2d Cir. 1990).  This includes application of New York's "borrowing statute," N.Y. C.P.L.R. § 202; *see Stuart* v. *Am. Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998), pursuant to which a claim brought by a nonresident plaintiff "cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued," N.Y. C.P.L.R. § 202.  Thus, "a court, when presented with a cause of action accruing outside New York, should apply the limitation period of the foreign jurisdiction if it bars the claim."  *Ins. Co. of N. Am.* v. *ABB Power Generation, Inc.*, 690 N.E.2d 1249, 1252-53 (N.Y. 1997).[8]

"New York courts interpreting the borrowing statute hold that the cause of action accrues in the place of the injury, and where an injury is purely economic, the place of injury is

---

[7]     A statute of limitations defense may be raised in a pre-answer motion to dismiss under Rule 12(b)(6) where, as here, "the defect appears on the face of the complaint."  *Lopez* v. *845 WEA Mgmt. Inc.*, No. 11 Civ. 281 (TPG), 2012 WL 661687, at *8 (S.D.N.Y. Feb. 29, 2012) (citing *Staehr* v. *Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 426-27 (2d Cir. 2008)).

[8]     Although the Investment Agreement specifies that it is governed by New York law, (Ex. 1, at 5 § 13), this does not preclude the application of New York's borrowing statute or the applicable UAE statutes of limitations because, "[u]nder New York law, a choice of law clause is construed as choosing only the applicable substantive law, not the applicable limitation period."  *Cafferty* v. *Scotti Bros. Records, Inc.*, 969 F. Supp. 193, 203 (S.D.N.Y. 1997).

usually where the plaintiff resides and sustains the economic impact of the loss." *Seippel* v. *Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 374 (S.D.N.Y. 2004) (internal quotation marks omitted), *amended on reconsideration on other grounds*, No. 03 Civ. 6942 (SAS), 2004 WL 2403911 (S.D.N.Y. Oct. 26, 2004); *accord Global Fin. Corp.* v. *Triarc Corp.*, 715 N.E.2d 482, 485 (N.Y. 1999). Here, Mashreq is a resident of the UAE, where it maintains its principal place of business. (¶ 15.) *See Robb Evans & Assocs. L.L.C.* v. *Sun Am. Life Ins.*, No. 10 Civ. 5999, 2012 WL 488257, at *3 (S.D.N.Y. Feb. 14, 2012). Furthermore, Mashreq alleges purely economic losses that it sustained in the UAE. (¶¶ 13, 89, 153, 174.) Accordingly, Mashreq's claims accrued in the UAE. *See Woori Bank* v. *Merrill Lynch*, No. 12 Civ. 3993(VM), 2013 WL 449912, at *3 (S.D.N.Y. Feb. 6, 2013). As a result, under New York's borrowing statute, the shorter of the UAE and New York statutes of limitations applies to Mashreq's claims.

The statute of limitations for Mashreq's breach of fiduciary duty claim is the same under both UAE and New York law. In the UAE, a breach of fiduciary duty claim, such as Mashreq's, is governed by the three-year statute of limitations set forth in Article 298 of the UAE Law of Civil Transactions. (Declaration of Ian D. Edge ¶¶ 18-20, dated May 30, 2013 ("Edge Decl.").)[9] Similarly, under New York law, where—as here—a breach of fiduciary duty claim seeks monetary as opposed to equitable relief, the statute of limitations is also three years. *IDT Corp.* v. *Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268, 272 (N.Y. 2009); *Bouley* v.

---

[9]   Under Federal Rule of Civil Procedure 44.1, "determinations of foreign law are questions of law to be decided by the Court. In a typical litigation involving foreign law, a motion to dismiss may be an appropriate time to decide the substance of another country's law that bears on the case at hand." *AIM Int'l Trading, L.L.C.* v. *Valcuine S.P.A.*, No. 02 Civ. 1363 (PKL), 2003 WL 21203503, at *5 (S.D.N.Y. May 22, 2003) (citation omitted).

*Bouley*, 797 N.Y.S.2d 221, 223-24 (4th Dep't 2005).[10]  Thus, Mashreq's breach of fiduciary claim is governed by a three-year limitations period under either New York or UAE law.

As to Mashreq's fraud claim, the UAE prescribes a shorter statute of limitations than New York.  The statute of limitations for fraud is three years under UAE law, (Edge Decl. ¶¶ 18, 21), compared to six years under New York law, N.Y. C.P.L.R. § 213(8).  Therefore, the UAE's three-year statute of limitations governs Mashreq's fraud claim.

Mashreq's breach of fiduciary duty and fraud claims are both based on supposedly unauthorized purchases of CDOs and CLOs.  (¶¶ 164, 170.)  Mashreq alleges that it discovered those securities were CDOs and CLOs no later than July 31, 2007.  (¶ 61.)  Even assuming that is the date on which the statutes of limitations began to run, the very latest that the three-year limitations periods for Mashreq's breach of fiduciary duty and fraud claims could have expired was July 31, 2010.  (Edge Dec. ¶¶ 23-24.)  As such, Mashreq's breach of fiduciary duty and fraud claims are time-barred, and should be dismissed.

## III.   MASHREQ'S BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED

To plead a viable breach of contract claim, Mashreq had to allege (1) the existence of an agreement, (2) adequate performance by Mashreq, (3) a breach by ING, and (4) damages.  *See Harsco Corp.* v. *Segui*, 91 F.3d 337, 348 (2d Cir. 1996).[11]  Mashreq's breach

---

[10]   Under New York law, a six-year statute of limitations governs breach of fiduciary duty claims "where an allegation of fraud is *essential* to" such a claim.  *IDT Corp.*, 907 N.E.2d at 272 (emphasis added).  Here, Mashreq's allegations of fraud are not essential to its breach of fiduciary duty claim, which, as discussed below, is practically identical to its breach of contract claim.  Thus, the six-year statute of limitations does not apply.  *See Marketxt Holdings Corp.* v. *Engel & Reiman, P.C.*, 693 F. Supp. 2d 387, 398 (S.D.N.Y. 2010); *see also Sansal* v. *Paschal*, No. 10 Civ. 8417 (JPO), 2012 WL 4336171, at *4 (S.D.N.Y. Sept. 12, 2012).

[11]   Mashreq's breach of contract claim fails for the additional reason that Mashreq does not plausibly allege a breach of the Investment Agreement resulting from ING's gross negligence or bad faith, as required by Section 10 of the agreement.  (*See* Ex. 1, at § 10 ("[ING] shall not be liable for . . . any loss . . . arising out of any action taken or omitted to be taken by [ING], except for actions or omissions resulting from [ING]'s *gross negligence or bad faith*." (emphasis added).)

11

of contract claim against ING is based on several purported violations of the Investment Guidelines.  (¶¶ 11, 157.)  Mashreq does not plausibly allege a breach of the vast majority of those provisions.  The allegations pertaining to those provisions therefore should be dismissed.

*First*, Mashreq alleges that ING violated Guideline 2 of the Investment Guidelines by failing to purchase securities that were "investment grade and liquid" because "the loans that comprised the collateral that constituted the sole assets of various shell companies that issued the toxic illiquid securities were universally below investment grade."  (¶ 157.)  Guideline 2, however, provided only that "[p]ortfolio securities should have a credit rating of 'A or better' . . . at purchase."  (Ex. 2, at 1 § 2.)  Mashreq nowhere alleges—including in its lengthy discussion of the alleged "toxicity" of the portfolio securities, (¶¶ 90-143)—that *any* of the securities purchased for its account carried credit ratings that were below those set forth in Guideline 2 at the time they were purchased.  Instead, Mashreq alleges only that the securities' *underlying collateral* was below investment grade.   Guideline 2, however, sets forth credit rating requirements for the *portfolio securities* only—not their underlying collateral.  In any event, as the monthly account statements that ING provided to Mashreq make clear, each of the 11 securities at issue had an "A or better" rating at the time of purchase.  (*See* Toal Decl., Ex. B, at 3; Ex. C, at 2; Ex. D, at 3; Ex. E, at 5; Ex. F, at 3; Ex. G, at 3.)  As such, Mashreq's allegations pertaining to Guideline 2 should be dismissed.

*Second*, Mashreq alleges that ING breached Guidelines 4 and 5 by purchasing CDOs and CLOs, both because such securities are "nowhere mentioned" in the Investment Guidelines' list of "Permitted Securities" and because they were supposedly "expressly prohibited" in the list of "Prohibited Investments."  (¶ 157.)  These allegations fail as a matter of law.   The very structure of the Investment Guidelines reflects that Guideline 4's list of

"Permitted Securities" was not intended to be comprehensive.  Indeed, if the parties had intended

Guideline 4 to be comprehensive, as Mashreq now evidently claims, Guideline 5's list of

"Prohibited Securities" would have been superfluous since any security not included in

Guideline 4 would, by definition, be prohibited.  Such an interpretation of the Guidelines would

be contrary to New York law.  *See Ronnen* v. *Ajax Elec. Motor Corp.*, 671 N.E.2d 534, 536

(N.Y. 1996) ("We have long and consistently ruled against any construction which would render

a contractual provision meaningless or without force or effect.").  Furthermore, CDOs and CLOs

*were* plainly included in Guideline 4's list of Permitted Securities, because those securities fall

within the category of "mortgage and other asset backed securities," expressly listed in Guideline

4.  (Ex. 2, at 1 § 4.)  CDOs are widely recognized as a type of asset-backed security—including

by Congress, *see* 15 U.S.C. § 78c(a)(79) ("The term 'asset-backed security'—(A) means a . . .

security collateralized by any type of self-liquidating financial asset . . . including . . . (ii) a

collateralized debt obligation; [and] (iii) a collateralized bond obligation . . . ."), and this Court,

*see, e.g.*, *Woori Bank* v. *Citigroup Inc.*, No. 12 Civ. 3868 (LTS), 2013 WL 1235648, at *1 n.2

(S.D.N.Y. Mar. 27, 2013) ("A CDO is an 'asset-backed security' . . . .").[12]  Mashreq does not

allege that the parties agreed to an understanding of CDOs or CLOs that differed from this

generally accepted definition.  Nor could Mashreq do so, since ING's practice of categorizing

those securities as ABS was *fully disclosed* to Mashreq in the November 2006 presentation on

---

[12]   *See also Woori Bank* v. *RBS Sec., Inc.*, No. 12 Civ. 4254 (HB), 2012 WL 6703352, at*1 n.1 (S.D.N.Y. Dec. 27,
2012) ("A CDO is an 'asset-backed security' . . . ."); *In re Merrill Lynch Auction Rate Sec. Litig.*, 851 F. Supp.
2d 512, 519 n.2 (S.D.N.Y. 2012) ("CDOs are a form of structured asset backed securities . . . ."); *Citibank,
N.A.* v. *Morgan Stanley & Co.*, 797 F. Supp. 2d 254, 255 (S.D.N.Y. 2011) (defining CDO as "an asset-backed
security ('ABS') backed by mortgages and other assets"); *In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d 206,
215 (S.D.N.Y. 2010) ("[C]ollateralized debt obligations ('CDOs') are a form of asset-backed security."); *In re
CitiGroup Inc. Bond Litig.*, 723 F. Supp. 2d 568, 575 (S.D.N.Y. 2010) ("A CDO is a type of asset-backed or
'structured' finance security."); *Gearren* v. *McGraw-Hill Cos.*, 690 F. Supp. 2d 254, 258 n.2 (S.D.N.Y. 2010)
("Collateralized debt obligations are also a type of asset-backed security."), *aff'd*, 660 F.3d 605 (2d Cir. 2011).

which Mashreq itself relies in its complaint.  (Ex. 4, at 4.)

In addition, as Mashreq itself concedes, (¶ 69), when the parties revised the Investment Guidelines in 2007, they deleted the phrase "securities with embedded leverage" from Guideline 5's list of Prohibited Investments.  (*Compare* Ex. 1, at 13 § 6, *with* Ex. 2, at 1 § 5.)  As the sources on which Mashreq itself relies make clear, CDOs constitute "securities with embedded leverage."  *See, e.g.*, Satyajit Das, *Discourse About Leverage*, EconoMonitor (Apr. 14, 2009), http://www.economonitor.com/blog/2009/04/discourse-about-leverage/ ("Collateralised debt obligation ('CDO') transactions also embed leverage.").  (¶ 78 & n.3.)[13] The parties' deletion of that phrase from the Investment Guidelines' list of Prohibited Investments evidences their intent to permit the purchase of such securities.  *Cf. Huen N.Y., Inc.* v. *Bd. of Educ. Clinton Cent. Sch. Dist.*, 890 N.Y.S.2d 748, 750 (4th Dep't 2009) (concluding that deletion of old provision and substitution of new provision regarding claims procedure "establishes the parties' intent to remove claims based on delay").  And, in all events, it is sufficient for present purposes—and dispositive of Mashreq's claim—that Guideline 5 nowhere prohibits the purchase of CDOs or CLOs.  Finally, to the extent that Mashreq attempts to plead that the Investment Guidelines prohibited CDOs and CLOs by reference to alleged statements made during the negotiation of the revised Investment Guidelines, such allegations are unavailing.  Particularly in view of the Investment Agreement's merger clause, in which the parties agreed that the written terms of the Agreement constituted their "entire agreement," (Ex. 1, at 5 § 12), Mashreq may not seek to vary those terms by reference to supposed oral agreements or understandings, *see Garza* v. *Marine Transp. Lines, Inc.*, 861 F.2d 23, 26 (2d Cir. 1988) ("When two parties have made a contract and have expressed it in a writing to which they

---

[13]    The Court may consider this article, as Mashreq incorporated it into the complaint by reference.  *See Chambers*, 282 F.3d at 152-53.

have both assented as the complete and accurate integration of that contract, evidence . . . of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing." (quotation omitted)).   Thus, Mashreq's allegations pertaining to Guidelines 4 and 5 should be dismissed.

Third, Mashreq alleges that ING breached Guideline 6, which imposed several exposure limits with respect to various categories of securities.  Guideline 6, for example, limited the portfolio's exposure to both corporate bonds and mortgage-backed securities to 50% of the portfolio's holdings.  But Mashreq does not allege that its portfolio exceeded those limits. Instead, it claims that ING violated Guideline 6 by investing 70% of the portfolio in CDOs and CLOs.  (¶ 157.)  This allegation fails to establish a breach of Guideline 6, however, because the plain text of the Investment Guidelines nowhere imposed any limits on investments in such securities.  Accordingly, Mashreq's allegations pertaining to Guideline 6 should be dismissed.

Fourth, Mashreq alleges that ING violated Guideline 7 by "failing to meet—by over 4,000 basis points—the agreed 'Performance Benchmark' of three-month LIBOR plus 0.50%."  (Id.)   But Mashreq points to no language in the Investment Agreement that imposed any obligation on ING to meet that benchmark, and none exists.  Mashreq's breach of contract claim based on Guideline 7 should be dismissed on that ground alone.  Cf. Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt., 712 F.3d 705, 725-26 (2d Cir. 2013) (rejecting claim based on investment guidelines provision regarding "Citigroup BIG" bond index because complaint did not allege manager "was required to replicate the investments of the Index" (quotation omitted)). Moreover, in the Investment Agreement, Mashreq explicitly disavowed the possibility that ING could incur liability in connection with the portfolio's performance.  Section 10 provides, in relevant part, that "[ING] shall have no liability to any person for the acts or omissions of any

15

third party or for any losses related to the Account's investment performance." (Ex. 1, at 5, § 10.) That provision speaks in broad, mandatory terms, and is fatal to Mashreq's claim based on any purported violation of Guideline 7. As such, any allegations pertaining to Guideline 7 should be dismissed.

Because Mashreq has failed plausibly to allege that ING breached the Investment Agreement, its breach of contract claim should be dismissed.

## IV.   MASHREQ'S FRAUD CLAIM SHOULD BE DISMISSED

To state a claim for fraud under New York law, a plaintiff must allege that:

(1) [the] defendant made a representation as to a material fact; (2) such representation was false; (3) defendant intended to deceive [the] plaintiff; (4) [the] plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of such reliance [the] plaintiff sustained pecuniary loss.

*Ross* v. *Louise Wise Servs., Inc.*, 868 N.E.2d 189, 195 (N.Y. 2007) (quotation and other alterations omitted). A claim for fraud under New York law must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), *see Olsen* v. *Pratt & Whitney Aircraft*, 136 F.3d 273, 275-76 (2d Cir. 1998), which requires that "a party . . . state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b). Mashreq's fraud claim does not meet these requirements.

### A.   Mashreq Has Failed to Allege Any Actionable, Non-Duplicative Misstatements or Omissions

As discussed below, *see infra* Section V, almost the entirety of Mashreq's fraud allegations are duplicative of its breach of contract allegations, and therefore should be dismissed. And those few purported misstatements that are not duplicative cannot remotely sustain a fraud claim.

*First*, Mashreq alleges that the Defendants "intentionally and misleadingly

categorized [the CDOs and CLOs in its account] as ABS or asset-backed securities in more detailed portfolio reports." (¶ 60.) As discussed above, however, the categorization of CDOs and CLOs as ABS is entirely consistent with standards recognized by both Congress and this Court—and most certainly was known to a sophisticated international banking concern such as Mashreq. And, in all events, ING's practice of categorizing those securities as ABS was *fully disclosed* to Mashreq in the November 2006 presentation on which Mashreq itself relies. (Ex. 4, at 4.) Accordingly, Mashreq cannot complain that the identification of CDOs and CLOs as ABS in the monthly account statements that ING provided to Mashreq was false or misleading.

*Second*, Mashreq alleges that the Defendants "concealed the true nature" of the CDOs and CLOs in its portfolio. (¶ 60.) It does not allege, however, what information about those securities was purportedly withheld. Nor can it, as the monthly account statements that ING provided to Mashreq expressly identified certain of those securities as CDOs and CLOs, and clearly provided the CUSIP and name, among other things, for each such security. (*See* Toal Decl., Ex. B, at 3, 7; Ex. C, at 2, 6; Ex. D, at 3, 5; Ex. E, at 5, 7; Ex. F, at 3, 5; Ex. G, at 3, 5.) *See supra* note 5. As noted above, that data would have allowed Mashreq to obtain any information about the securities at issue, including their classification as CDOs or CLOs. (*See* Toal Decl., Ex. H.) *See supra* note 6. Mashreq was thus provided with sufficient identifying information to allow it to obtain whatever additional information about the securities it wished. Mashreq's complaint, which contains some fifty-four paragraphs of allegations detailing the results of its independent efforts to learn about those securities in anticipation of this litigation, (*see* ¶¶ 90-143), confirms that nothing was withheld from Mashreq that it could not have learned on its own based upon the account statements that ING provided to Mashreq.

*Third*, Mashreq alleges that "it appears that ING cooks the composite results that

17

it uses to market its Intermediate Fixed Income Managed Accounts to the present day." (¶ 145.) To support this allegation, Mashreq relies on a document issued by ING in *2012*—some seven years after Mashreq initially invested with ING and some five years after the purchase of the securities at issue. (Ex. 3.) Mashreq does not allege that it ever saw this document—or even one like it—at any time before or during its investment with ING. As such, Mashreq cannot allege that it actually relied on any purported misrepresentations contained in that document in deciding to invest with ING or to remain invested with ING. *See Stolow* v. *Greg Manning Auctions, Inc.*, 258 F. Supp. 2d 236, 248 (S.D.N.Y.) ("[A] plaintiff must allege that he actually relied on the purported fraudulent statements or omissions."), *aff'd*, 80 F. App'x 722 (2d Cir. 2003).

*Fourth*, Mashreq alleges that the Defendants falsely stated during a July 31, 2007 conference call that the CDOs and CLOs in Mashreq's portfolio were "money good," that "[v]aluations were tough in the current market conditions," (¶¶ 61, 62), and that an ING employee wrote in a September 16, 2007 email to Mashreq that "the fundamentals of the particular investments at issue are generally sound notwithstanding the current mark-downs and illiquidity," (¶ 85). These statements, which are "too vague or equivocal to be actionable," *Fishbaum* v. *Liz Claiborne, Inc.*, No. 98-9396, 1999 WL 568023, at *2 (2d Cir. July 27, 1999), cannot support Mashreq's fraud theory. As an initial matter, it is well settled that "[e]ncouraging characterizations of investments, in and of themselves, do not constitute representations of fact that could be actionable." *Leslie* v. *Minson*, 679 F. Supp. 280, 285 (S.D.N.Y. 1988) (internal quotation marks omitted). Furthermore, courts in this District have recognized that the valuation of illiquid securities such as CDOs and CLOs "is not a precise science" and that statements about valuation are therefore statements of opinion, not fact. *See Fraternity Fund Ltd.* v. *Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 361-62 (S.D.N.Y. 2007) (discussing collateralized

mortgage obligations).  As a result, these statements could sustain a fraud claim only if Mashreq plausibly alleged that the Defendants subjectively disbelieved those statements at the time they were made.  *See Arthur Props., S.A.* v. *ABA Gallery, Inc.*, No. 11 Civ. 4409 (LAK), 2011 WL 5910192, at *2 n.17 (S.D.N.Y. Nov. 28, 2011).  Mashreq has made no such allegations.  Instead, Mashreq alleges only that it has concluded, based on its own investigation into the securities at issue, that there was no basis on which the Defendants could have made these statements.  That conclusion, however, is no substitute for a plausible allegation of the Defendants' subjective disbelief.  In short, Mashreq has not alleged with the requisite particularity any facts from which it can be inferred that Defendants made any actionable misstatements or omissions to Mashreq.

### B.    Mashreq Has Failed to Allege Scienter

To sustain a fraud claim, a plaintiff is required to "plead the factual basis which gives rise to a strong inference of fraudulent intent."  *O'Brien* v. *Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) (internal quotation marks omitted).  A strong inference of fraudulent intent "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Lerner* v. *Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006) (quotation omitted).  This standard has not been met here.

The thrust of Mashreq's scienter theory is that the Defendants may have received greater commissions by using broker-dealers affiliated with ING to execute trades for Mashreq's account.  (¶ 36.)  This theory fails for several reasons.  As an initial matter, Mashreq's allegation that "[ING] and the [ING] team managing the account were *likely* 'credited' . . . with as much as half of these commissions," (*id.* (emphasis added)), is, by its own terms, made on information and belief.  This type of allegation does not, on its own, give rise to a plausible inference of fraudulent intent.  *See Ferring B.V.* v. *Allergan, Inc.*, No. 12 Civ. 2650, 2013 WL 1144878, at

*16 (S.D.N.Y. Mar. 19, 2013).  Furthermore, as Mashreq itself concedes, Mashreq explicitly *agreed* that ING could use affiliated broker-dealers to execute trades for the account.  (¶ 36 ("[T]he [Investment Agreement] expressly allow[s] [ING] to use affiliated broker dealers to execute trades for the account.").)  Mashreq thus knew from the outset—and agreed—that the ING team managing its account might be credited with trade commissions.  Courts have consistently held that "[t]he desire to maintain high compensation . . . does not constitute motive to defraud."  *Saltz* v. *First Frontier, LP*, 782 F. Supp. 2d 61, 72 (S.D.N.Y. 2010) (collecting cases), *aff'd*, 485 F. App'x 461 (2d Cir. 2012).[14]  Nor does Mashreq allege how or why the Defendants were motivated to purchase CDOs and CLOs in particular, as opposed to other investment products that presumably would also have generated the purported commissions about which Mashreq complains.  *See In re Merrill Lynch Auction Rate Sec. Litig.*, 851 F. Supp. 2d at 528-29 ("Plaintiff . . . does not allege that [defendant] was particularly motivated to sell [auction rate securities], as opposed to any other product; it only alleges that [defendant] earned substantial fees and was concerned for its bottom line." (footnote omitted)).

Finally, Mashreq appears to allege that the Defendants' scienter may be inferred from the fact that Mashreq would have withdrawn its funds if it had known about the Defendants' alleged deceit, (¶ 172)—that is, that the Defendants had to lie to keep Mashreq's money.  But just as Mashreq has failed plausibly to allege actionable misrepresentations or omissions, it has failed to raise a strong inference of scienter.  As the Defendants have already pointed out, Mashreq's theory that the Defendants concealed their purchases of CDOs and CLOs from Mashreq is punctured by the fact that this information was fully disclosed to Mashreq:  the

---

[14]  Mashreq's allegation that "there was no way for Mashreq to know . . . when it signed the [Investment Agreement]" that the use of affiliated broker-dealers "was an unusual arrangement," (¶ 36), is not plausible given Mashreq's status as a sophisticated international banking concern.  Nor is it relevant, since, whether unusual or not, Mashreq knew of and agreed to that term when it entered into the Investment Agreement.

Defendants provided Mashreq monthly account statements specifically identifying certain securities as CDOs and CLOs and providing Mashreq with every security's CUSIP, thus permitting Mashreq to investigate the nature of the investment.  Furthermore, as noted, the November 2006 presentation on which Mashreq relies explicitly classified CDOs as ABS. Thus, because Mashreq does not plausibly allege that the Defendants concealed any information about the CDO and CLO investments that they were required to disclose, Mashreq does "not identify any misdeed to which scienter might apply."  *Loreley Fin. (Jersey) No. 3 Ltd.* v. *Wells Fargo Sec. LLC*, No. 12 Civ. 3723 (RJS), 2013 WL 1294668, at *12 (S.D.N.Y. Mar. 28, 2013).

### C.     Mashreq Has Failed to Allege Fraud as to Defendant Richard Kilbride

Mashreq's only claim against Mr. Kilbride is for fraud.  In addition to the reasons discussed above, this claim fails for the additional reason that it does not satisfy Rule 9(b).  Mashreq alleges only two interactions with the Defendants that purportedly involved Mr. Kilbride, but does not allege with sufficient particularity any purported misstatements by Mr. Kilbride himself.  *See Eaves* v. *Design for Fin., Inc.*, 785 F. Supp. 2d 229, 247 (S.D.N.Y. 2011) ("[A] plaintiff may not lump separate defendants together in vague and collective allegations but must inform each defendant of the nature of his alleged participation in the fraud." (internal quotation marks omitted)).

Mashreq first alleges that Mr. Kilbride and two other ING employees made a presentation to Mashreq in New York in November 2006.  (¶¶ 39-48.)[15]  Mashreq quotes several excerpts from that presentation and alleges that the parties thereafter agreed on the Investment Guidelines, which, according to Mashreq, the Defendants "blatantly violated" by "load[ing] Mashreq's portfolio with illiquid toxic securities."  (¶ 58.)  But all Mashreq says about

---

[15]   Defendants assume for the purpose of this motion, but do not concede, that Mr. Kilbride attended the November 2006 presentation, as Mashreq alleges.  *See Twombly*, 550 U.S. at 555-56.

Mr. Kilbride is that he "signed the [Investment Guidelines] on behalf of ING." (¶ 57.) Significantly, Mashreq does not allege that *any* of the Defendants' representatives made any false statements to Mashreq during that presentation, much less that Mr. Kilbride did so.

Mashreq next alleges that it participated in a conference call on July 31, 2007 with Mr. Kilbride and two other ING employees. Mashreq alleges that during this call it was told that certain securities were "money good" and that "'[v]aluations were tough in the current market conditions.'" (¶¶ 61-62.) Mashreq alleges that the speakers of these purported misstatements were the "Defendants." (*Id.*) As discussed above, these statements are not actionable in fraud. But even assuming they were, Mashreq fails to identify which of the participants in that call made those purported misstatements. Instead, Mashreq refers in generic terms to the "Defendants." That is not enough under Rule 9(b). *See Welch* v. *TD Ameritrade Holding Corp.*, No. 07 Civ. 6904 (RJS), 2009 WL 2356131, at *6 (S.D.N.Y. July 27, 2009) ("Plaintiff improperly groups all Defendants together through the use of headings that label his allegations as misrepresentations by the 'TD Ameritrade Defendants.'"). Accordingly, Mashreq's fraud claim against Mr. Kilbride should be dismissed.

### D.   Mashreq Cannot Recover Lost Profits for Fraud

Mashreq's fraud claim suffers from yet another fundamental defect: it seeks approximately $18 million that Mashreq claims it would have earned if its portfolio had been invested in more conservative investment products. (¶ 174.) In other words, Mashreq seeks profits it allegedly could have made but for the alleged fraud. New York law, however, categorically bars recovery of lost profits for fraud. *See Lama Holding Co.* v. *Smith Barney Inc.*, 668 N.E.2d 1370, 1373-74 (N.Y. 1996). As such, Mashreq's fraud claim should be dismissed to the extent it seeks lost profits.

## V.   MASHREQ'S BREACH OF FIDUCIARY DUTY AND FRAUD CLAIMS ARE DUPLICATIVE OF MASHREQ'S BREACH OF CONTRACT CLAIM

Under New York law, a complaint cannot support breach of fiduciary duty and fraud claims that are predicated upon, and duplicative of, a breach of contract claim.  *See Guilbert* v. *Gardner*, 480 F.3d 140, 148 (2d Cir. 2007) (fraud); *Ellington Credit Fund, LTD.* v. *Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 196 (S.D.N.Y. 2011) (breach of fiduciary duty).  Thus, where breach of fiduciary duty and fraud claims allege the same conduct that would also constitute a breach of the parties' contract, the breach of fiduciary duty and fraud claims must be dismissed.  *See William Kaufman Org., Ltd.* v. *Graham & James LLP*, 703 N.Y.S.2d 439, 442 (1st Dep't 2000); *Morgan* v. *A.O. Smith Corp.*, 697 N.Y.S.2d 152, 152 (2d Dep't 1999).

Here, each of the seven allegations underlying Mashreq's breach of contract claim is substantively identical to the allegations underlying Mashreq's breach of fiduciary duty claim.  (*Compare* ¶ 157(i)-(vii), *with* ¶¶ 164(i)-(vi), 167(b).)  For instance, Mashreq alleges that ING breached the Investment Agreement by "failing to invest the plaintiff's funds in securities that met the letter and spirit of guideline 2 on 'Credit Quality,'" (¶ 157), and that they breached their fiduciary duty to Mashreq by failing to "invest[] in securities that met the credit quality outlined in the parties' [Investment Guidelines]," (¶ 164).  In short, each of the alleged breaches underlying Mashreq's breach of fiduciary duty claim is "merely a restatement, albeit in slightly different language, of the . . . contractual obligations asserted in the . . . breach of contract [claim]."  *Clark-Fitzpatrick, Inc.* v. *Long Island R.R. Co.*, 516 N.E.2d 190, 194 (N.Y. 1987).  As any duty that Mashreq alleges ING owed to it "derived directly and exclusively from [the parties'] contractual relationship," *Physicians Mut. Ins. Co.* v. *Greystone Servicing Corp.*, No. 07 Civ. 10490 (NRB), 2009 WL 855648, at *10 (S.D.N.Y. Mar. 25, 2009), the breach of fiduciary duty claim is duplicative of the breach of contract claim.

Similarly, each of the purported misrepresentations on which Mashreq relies to support its fraud claim, as set forth in Paragraph 144 of the complaint, is *identical* to each of the alleged breaches underlying Mashreq's breach of contract claim.  (*Compare* ¶ 144(a)-(g), *with* ¶ 157(i)-(vii).)   Indeed, Mashreq alleges that the Defendants "made materially false and misleading affirmative representations and omissions to Mashreq *in the* [*Investment Guidelines*]."  (¶ 170 (emphasis added); *see also* ¶ 172 (alleging that the Defendants "l[ied] in the [Investment Guidelines]").)  Because Mashreq alleges that these obligations are outlined in the Investment Agreement itself, Mashreq has failed to allege a duty on the part of the Defendants that is "collateral" or "extraneous" to the Investment Agreement.  *See New World Trading Co.* v. *Avshalomov*, No. 11 Civ. 6219 (SAS), 2012 WL 4378055, at *2 (S.D.N.Y. Sept. 24, 2012).  Furthermore, to the extent Mashreq alleges that the Defendants misrepresented their intent to perform under the Investment Agreement, (*e.g.*, ¶ 37), its fraud claim nevertheless fails, as "[c]ourts have repeatedly rejected attempts by plaintiffs to convert breach of contract claims into fraud claims by merely alleging that defendants never intended to fulfill their contractual duties."  *New World Trading Co.*, 2012 WL 4378055, at *2 (collecting cases).

Mashreq's breach of fiduciary duty and fraud claims thus should be dismissed.

## VI.   MASHREQ'S DEMAND FOR PUNITIVE DAMAGES SHOULD BE STRICKEN

Mashreq's prayer for relief includes a demand for punitive damages.  The complaint does not make clear, however, whether that demand is associated with any particular claim or claims.  Of Mashreq's three claims, only its breach of fiduciary duty and fraud claims could conceivably support a punitive damages demand, and even then *only* if Mashreq plausibly alleged "intentional or deliberate wrongdoing, aggravating or outrageous circumstances, fraudulent or evil motive, or [a] conscious act in willful and wanton disregard of [its] rights." *Ulico Cas. Co.* v. *Wilson, Elser, Moskowitz, Edelman & Dicker*, 865 N.Y.S.2d 14, 24 (1st Dep't

2008) (quotation omitted).  Mashreq has alleged nothing of the sort, and its breach of fiduciary duty and fraud claims should be dismissed on several other grounds in any event.  Mashreq's breach of contract claim should also be dismissed, but even if any portion of it survives, it alone cannot sustain Mashreq's demand for punitive damages as a matter of longstanding New York law.  *See New York Univ.* v. *Cont'l Ins. Co.*, 662 N.E.2d 763, 767 (N.Y. 1995).  Accordingly, Mashreq's demand for punitive damages should be stricken.  *See Goldner* v. *Possilico*, 776 N.Y.S.2d 818, 820 (2d Dep't 2004).

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the Court grant their motion to dismiss Mashreq's claims with prejudice.

Dated: May 31, 2013
New York, New York

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: _____s/ Daniel J. Toal_____
    Brad S. Karp
    Daniel J. Toal
    Gregory F. Laufer

1285 Avenue of the Americas
New York, New York 10019-6064
Tel. (212) 373-3000
Fax (212) 757-3980
bkarp@paulweiss.com
dtoal@paulweiss.com
glaufer@paulweiss.com

*Attorneys for Defendants.*