UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MASHREQBANK, PSC,

                Plaintiff,

          v.

ING GROEP N.V., ING INVESTMENT
MANAGEMENT COMPANY a/k/a ING
INVESTMENT MANAGEMENT U.S.,
ING MANAGED ACCOUNT GROUP or
ING INVESTMENT MANAGEMENT
AMERICAS, RICHARD KILBRIDE, and
DOES 1-10 inclusive,

                Defendants.

No. 13-cv- 02318 (LGS)

ECF Case

## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ....................................................................................................ii

I.   Mashreq's Claims Are Time-Barred Due to Its Failure to Timely Object to the Transactions at Issue ................................................................................................ 1

II.  The New York Borrowing Statute Bars Mashreq's Breach of Fiduciary Duty and Fraud Claims ............................................................................................................. 3

III. Mashreq's Breach of Contract Claim Should Be Dismissed ............................................. 5

IV.  Mashreq's Fraud Claim Should Be Dismissed ................................................................. 6

V.   The Complaint Should Be Dismissed as against Defendant Richard Kilbride .................. 8

VI.  Mashreq's Breach of Fiduciary Duty and Fraud Claims Are Duplicative of Mashreq's Breach of Contract Claim .......................................................................... 9

VII. Mashreq's Demand for Punitive Damages Should Be Stricken ...................................... 10

CONCLUSION ..................................................................................................................... 10

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

CASES

*Ashcroft* v. *Iqbal*,
   556 U.S. 662 (2009)......................................................................................................7, 8

*Assured Guaranty (UK) Ltd.* v. *J.P. Morgan Investment Management Inc.*,
   915 N.Y.S.2d 7 (1st Dep't 2010) .....................................................................................2

*Bank* v. *Brooklyn Law Sch.*,
   No. 97 Civ. 7470 (JG), 2000 WL 1692844 (E.D.N.Y. Oct. 6, 2000) ...............................8

*Citibank, N.A.* v. *Itochu Int'l, Inc.*,
   No. 01 Civ. 6007 (GBD), 2003 WL 1797847 (S.D.N.Y. Apr. 4, 2003)...............................10

*Citibank, N.A.* v. *Morgan Stanley & Co.*,
   797 F. Supp. 2d 254 (S.D.N.Y. 2011).............................................................................5

*E-Global Alliances, LLC* v. *Anderson*,
   No. 10 Civ. 2844 (KMK), 2011 WL 8879268 (S.D.N.Y. May 11, 2011)...........................6

*First Bank of the Americas* v. *Motor Car Funding, Inc.*,
   690 N.Y.S.2d 17 (1st Dep't 1999) ...................................................................................7

*In re Gaston & Snow*,
   243 F.3d 599 (2d Cir. 2001)............................................................................................4

*GML, Inc.* v. *Cinque & Cinque, P.C.*,
   877 N.E.2d 649 (N.Y. 2007) ..........................................................................................4

*Gordon & Co.* v. *Ross*,
   63 F. Supp. 2d 405 (S.D.N.Y. 1999)..............................................................................4

*Happy Dack Trading Co.* v. *Agro Indus., Inc.*,
   602 F. Supp. 986 (S.D.N.Y. 1984)..................................................................................5

*Hornstein* v. *Negev Airbase Constructors*,
   488 N.Y.S.2d 435 (2d Dep't 1985) .................................................................................1

*Ins. Co. of N. Am.* v. *ABB Power Generation*,
   690 N.E.2d 1249 (N.Y. 1997)........................................................................................4

*JP Morgan Chase Bank* v. *Winnick*,
   406 F. Supp. 2d 247 (S.D.N.Y. 2005).............................................................................8

*Kingsley Arms, Inc.* v. *Sano Rubin Constr. Co.*,
   791 N.Y.S.2d 196 (3d Dep't 2005).............................................................................2, 3

**TABLE OF AUTHORITIES**
**(Continued)**

Page(s)

*Lerner* v. *Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006)..................................................................................9

*Madu, Edozie & Madu, P.C.* v. *SocketWorks Ltd. Nig.*,
    265 F.R.D. 106 (S.D.N.Y. 2010) .........................................................................3

*In re Merrill Lynch Auction Rate Sec. Litig.*,
    851 F. Supp. 2d 512 (S.D.N.Y. 2012)..................................................................5

*MRW Constr. Co.* v. *City of New York*,
    636 N.Y.S.2d 344 (1st Dep't 1996) .....................................................................3

*Pryhuber* v. *Maffucci Storage Corp.*,
    567 N.Y.S.2d 81 (2d Dep't 1991).........................................................................3

*Stafford* v. *International Harvester Co.*,
    668 F.2d 142 (2d Cir. 1981).................................................................................4

*Torchlight Loan Servs., LLC* v. *Column Fin., Inc.*,
    No. 11 Civ. 7426 (RWS), 2012 WL 3065929 (S.D.N.Y. July 25, 2012) ................9

*Woori Bank* v. *Citigroup Inc.*,
    No. 12 Civ. 3868 (LTS), 2013 WL 1235648 (S.D.N.Y. Mar. 27, 2013)................5

*Woori Bank* v. *RBS Sec., Inc.*,
    No. 12 Civ. 4254 (HB), 2012 WL 6703352 (S.D.N.Y. Dec. 27, 2012) .................5

*Yakin* v. *Tyler Hill Corp.*,
    566 F.3d 72 (2d Cir. 2009)...................................................................................7

**STATUTES**

15 U.S.C. § 78c(a)(79)...................................................................................................5

N.Y. C.P.L.R. § 202.......................................................................................................3

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) .................................................................................................6, 8, 9

Fed. R. Civ. P. 15(a)(1)(B) .........................................................................................10

iii

In their opening brief, Defendants demonstrated that *all* of Mashreq's claims fail as a matter of law because they are time-barred, do not plausibly allege a breach of the parties' investment guidelines or any actionable fraud, assert breach of fiduciary duty and fraud claims that are duplicative of the deficient breach of contract claim, and impermissibly seek lost profits and punitive damages.[1]  In its opposition papers, Mashreq attempts to evade the plain language of the parties' contract, relies on overruled case law, fails to identify any allegations that would suffice to state a breach of contract or fraud claim, concedes that all of its claims are predicated upon the parties' contract and, therefore, are duplicative, and identifies no authority to support its request for punitive damages.  None of Mashreq's faulty and misguided arguments salvage its claims.  Accordingly, Defendants' motion to dismiss should be granted.

## I.     MASHREQ'S CLAIMS ARE TIME-BARRED DUE TO ITS FAILURE TO TIMELY OBJECT TO THE TRANSACTIONS AT ISSUE

Defendants' opening brief demonstrated that the unambiguous language of the parties' contract imposed a 30-day period within which to assert any claim—such as those Mashreq attempts to bring here—based on a supposed failure to comply with the Investment Guidelines.  Defendants further demonstrated that similar contractual limitations periods have been upheld as reasonable under New York law and that courts do not hesitate to enforce these provisions on motions to dismiss.[2]  (Br. 6.)

In Section 2(d) of the Investment Guidelines, Mashreq and ING expressly agreed

---

[1]   Unless otherwise noted, Defendants incorporate herein all defined terms and abbreviations used in their moving papers.  Citations to "Br." refer to Defendants' Memorandum of Law in Support of Motion to Dismiss. Citations to "Opp'n" refer to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint.  Citations to "¶" refer to paragraphs in the complaint.  Citations to "Ex." refer to the exhibits attached to the complaint.

[2]   *See, e.g., Hornstein* v. *Negev Airbase Constructors*, 488 N.Y.S.2d 435, 436 (2d Dep't 1985) (30-day limitations period enforced).

that "[a]ll transactions . . . will be deemed to be in compliance with the Investment Guidelines unless written notice to the contrary is received by [ING] from Client within 30 days following the first issue of the periodic report containing such transactions." (Ex. 1, at 2, § 2(d).) Section 2(d) thus required Mashreq to object in writing within 30 days of receiving the first account statement or other report reflecting any transaction it sought to challenge.[3]  Transactions that Mashreq failed to dispute within this time period were deemed to comply with the terms of the Investment Guidelines and consequently were not subject to later challenge.[4]

Mashreq does not dispute that it received reports identifying the 11 transactions about which it now seeks to complain as of the dates specified in Defendants' motion papers. Nor does Mashreq dispute that it had a contractual obligation to provide written notice of any objection to these securities. Mashreq now claims, however, that a newly produced August 7, 2007 letter should be deemed its "written notice." (Opp'n, Ex. A.) However, even if, contrary to the terms of the parties' contract, this letter were deemed to constitute a valid written objection to the 11 securities, Mashreq's claims would *still* be untimely as to 9 of the securities at issue because the last date of the monthly statements reflecting their purchases was June 8, 2007— more than 30 days before August 7, 2007. (Br. 7.) In any event, Mashreq cannot rely on this letter, as it was not appended to the complaint and is neither incorporated by reference into, nor

---

[3]    Mashreq incorrectly suggests that Defendants' argument concerning Section 2(d) applies only to Mashreq's breach of contract claim. To the contrary, as Defendants argued in their motion papers, (Br. 6), that failure is fatal to *all* of Mashreq's claims.

[4]    Mashreq cites to no authority for its argument that talismanic language such as "liability" and "release" is a prerequisite to enforcement of a contractual limitations period. Indeed, courts have enforced contractual limitations provisions based on a variety of different wordings, including ones that do not contain the language in *Assured Guaranty (UK) Ltd.* v. *J.P. Morgan Investment Management Inc.*, 915 N.Y.S.2d 7, 10 (1st Dep't 2010). *See, e.g., Kingsley Arms, Inc.* v. *Sano Rubin Constr. Co.*, 791 N.Y.S.2d 196, 197 (3d Dep't 2005) (contract providing that "[c]laims by either party must be made within 21 days after occurrence of the event giving rise to such [c]laim or within 21 days after the claimant first recognizes the condition giving rise to the [c]laim, whichever is later. Claims must be made by written notice") (alterations in original).

integral to, the complaint.  *See Madu, Edozie & Madu, P.C.* v. *SocketWorks Ltd. Nig.*, 265 F.R.D. 106, 122–23 (S.D.N.Y. 2010).  Nor does the letter constitute "written notice" within the meaning of the parties' contract because it does not comply with Section 14 of the Investment Agreement. (Br. 6-7.)[5]  And, in all events, on its face, the August 7, 2007 letter does not state an objection to the 11 securities at issue; rather it raises a question and concedes that Defendants' understanding of CDOs as a class of ABS "may well be so."  (Opp'n, Ex. A.)  The letter thus does not constitute notice that Mashreq was contending that the 11 securities violated the terms of the Investment Guidelines.  Accordingly, all of Mashreq's claims based on the purchase of these securities should be dismissed as a matter of law.[6]

## II.      THE NEW YORK BORROWING STATUTE BARS MASHREQ'S BREACH OF FIDUCIARY DUTY AND FRAUD CLAIMS

Defendants previously established that Mashreq's fiduciary duty and fraud claims are also untimely under the UAE's three-year statute of limitations, which applies pursuant to New York's borrowing statute, N.Y. C.P.L.R. § 202.  (Br. 9–11.)  Mashreq's arguments to the contrary are unavailing.

---

[5]   For the same reason, the August 29, 2007 email that Mashreq cited in its complaint, which also failed to comply with Section 14, does not constitute "written notice" within the meaning of the contract and, even if it did, would salvage Mashreq's claims as to only 1 of the 11 securities.  (Br. 7–8.)  *See, e.g., Kingsley Arms*, 791 N.Y.S.2d at 197 (holding that where "compliance with . . . notice provisions . . . [is] a condition precedent to plaintiff's claim, [plaintiff's] failure to strictly comply is a waiver of its claim," and collecting cases); *MRW Constr. Co.* v. *City of New York*, 636 N.Y.S.2d 344, 344 (1st Dep't 1996) (affirming dismissal "since plaintiff failed to prove strict compliance with the notice and damage documentation requirements of . . . the contract"); *Pryhuber* v. *Maffucci Storage Corp.*, 567 N.Y.S.2d 81, 82 (2d Dep't 1991) (affirming "summary judgment on the ground that the plaintiff failed to file a timely written notice of claim").

[6]   Mashreq's suggestion that the parties' tolling agreement somehow serves to revive its expired claims is baseless.  (Opp'n 2 n.4.)  ING and Mashreq entered into a tolling agreement on January 25, 2013—over five years after Mashreq's claims expired—and the agreement specifically provides that "[n]othing in this Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, period of prescription, statutes of repose or other time-related defense as of the Effective Date."  (Supplemental Declaration of Daniel J. Toal in Support of Defendants' Motion to Dismiss the Complaint, Ex. A, ¶ 3, dated July 19, 2013.)

*First*, Mashreq argues, in reliance on *Stafford* v. *International Harvester Co.*, 668 F.2d 142 (2d Cir. 1981), that New York's borrowing statute does not apply because this action purportedly could not have been brought in the UAE.   The New York Court of Appeals, however, has squarely rejected *Stafford*'s interpretation of New York's borrowing statute.  *Ins. Co. of N. Am.* v. *ABB Power Generation*, 690 N.E.2d 1249, 1252–53 (N.Y. 1997) (holding that, as a matter of New York law, "[i]t matters not that jurisdiction is unobtainable over a defendant in the foreign jurisdiction or that the parties have contracted to be venued in this State").  In light of *ABB Power Generation*, *Stafford* is no longer good law, as the Second Circuit, this Court, and the New York Court of Appeals have all expressly recognized.[7]

*Second*, Mashreq claims that even if UAE law applies, Article 95 of the UAE Commercial Code's ten-year statute of limitations applies to its fiduciary duty and fraud claims. Mashreq's UAE law expert admits, however, that these causes of action are not separately defined under UAE law, and his opinion depends on his unsupported assertion that they should be treated as contract claims.  (Al Obeidli Decl. ¶ 7.)  Mashreq's expert is incorrect.  Causes of action not separately defined under UAE law are not governed by Article 95 but by Article 298 of the UAE Law of Civil Transactions, which applies to "unlawful acts" and includes all causes of action that do not independently exist in the UAE.  (*See* Supplemental Declaration of Ian D. Edge ¶¶ 8–15, dated July 18, 2013.)[8]  Article 298 imposes a three-year statute of limitations for any such unlawful acts.   That statute of limitations, made applicable under New York's borrowing statute, thus renders Mashreq's fiduciary duty and fraud claims untimely.  For this

---

[7]   *See In re Gaston & Snow*, 243 F.3d 599, 608 n.7 (2d Cir. 2001); *Gordon & Co.* v. *Ross*, 63 F. Supp. 2d 405, 408 (S.D.N.Y. 1999); *GML, Inc.* v. *Cinque & Cinque, P.C.*, 877 N.E.2d 649, 650 (N.Y. 2007).

[8]   Mashreq's expert does not even attempt to explain why Article 298 does not apply, other than to say—without citing any authority—that any claims between parties to a contract are governed by Article 95.

additional reason, both claims should be dismissed as a matter of law.

## III.   MASHREQ'S BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED

As detailed in Defendants' opening brief, Mashreq has failed plausibly to allege a breach of contact claim. (Br. 11–16.) Mashreq's strained attempts to argue that CDOs were not permitted under the Investment Guidelines—all of which contradict the plain language of the contract—are in vain.

*First*, as the Investment Guidelines reflect, "asset backed securities" were expressly included in Guideline 4's list of Permitted Securities. (Ex. 2, at 1 § 4.) And, as Defendants explained in their moving brief, CDOs are widely recognized as a type of asset-backed security, as confirmed by federal statute, *see* 15 U.S.C. § 78c(a)(79), and numerous cases in this Court.[9] *Second*, the removal of the prohibition on "securities with embedded leverage" from the Investment Guidelines specifically allowed the purchase of CDOs and CLOs, a subset of ABS at least "some" of which, as Mashreq itself concedes, "contain embedded leverage." (¶ 77.) *Third*, Mashreq's attempted reliance on purported extra-contractual statements about CDOs and CLOs is precluded by the merger clause in Section 12 of the Investment Agreement as a matter of New York law. *See Happy Dack Trading Co.* v. *Agro Indus., Inc.*, 602 F. Supp. 986, 991 (S.D.N.Y. 1984).

Mashreq's other arguments with respect to its contract claim fare no better. For example, its allegations regarding the percentage of the portfolio invested in CDOs and CLOs

---

[9]   Mashreq's contention that the cases to which Defendants cite do not reflect the classification of CDOs during the relevant time period is incorrect. (Opp'n 8.) While those cases may have been *decided* in 2011–2013, they address *events that occurred* during the same time period in which the instant dispute arose. *See Woori Bank* v. *Citigroup Inc.*, No. 12 Civ. 3868 (LTS), 2013 WL 1235648, at *1 (S.D.N.Y. Mar. 27, 2013) (CDOs arranged from 2000 to 2006); *Woori Bank* v. *RBS Sec., Inc.*, No. 12 Civ. 4254 (HB), 2012 WL 6703352, at*1 (S.D.N.Y. Dec. 27, 2012) (CDOs issued in 2006 and 2007); *In re Merrill Lynch Auction Rate Sec. Litig.*, 851 F. Supp. 2d 512, 519-20 (S.D.N.Y. 2012) (CDOs underwritten in 2003 and 2004, and purchased in 2007); *Citibank, N.A.* v. *Morgan Stanley & Co.*, 797 F. Supp. 2d 254, 255 (S.D.N.Y. 2011) (CDO issued in 2006 and defaulted in 2008).

cannot possibly state a claim for breach, (Opp'n 9), as the Investment Guidelines nowhere imposed any limits on investments in such securities.  Moreover, ING may not be held liable for failing to hit the performance "target" of 3-month LIBOR +0.50%, as the Investment Agreement expressly *disclaimed* liability in connection with the portfolio's performance.  (Ex. 1, at 5, § 10.)

Accordingly, because Mashreq has failed plausibly to allege a breach of the Investment Agreement, the Court should dismiss Mashreq's breach of contract claim.

## IV.    MASHREQ'S FRAUD CLAIM SHOULD BE DISMISSED

Defendants demonstrated in their opening brief that Mashreq fails to state a claim for fraud because it has not alleged any actionable misstatements or omissions or the requisite scienter, and certainly not with sufficient particularity to satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  (Br. 16–21.)  Mashreq's arguments to the contrary fall far short of the mark.[10]

*First*, because Mashreq has failed plausibly to allege that ING withheld any information concerning the securities at issue, it has not adequately pleaded an actionable misstatement or omission by ING.  Crucially, the account statements that ING provided to Mashreq[11] demonstrate that ING correctly identified the securities at issue as ABS, (*see supra* Section III), and provided ample identifying information regarding the securities, such as the CUSIP numbers and security descriptions—which in some instances specifically denoted the securities as "CDOs" or "CLOs."  (Toal Decl. Exs. B–G.)  Mashreq, in fact, concedes that ING

---

[10]  Mashreq does not even try to rebut Defendants' argument that it is prohibited from seeking lost profits in connection with its fraud claim.  *See E-Global Alliances, LLC* v. *Anderson*, No. 10 Civ. 2844 (KMK), 2011 WL 8879268, at *7 (S.D.N.Y. May 11, 2011).  Its fraud claim therefore should be dismissed to the extent it seeks such damages.

[11]  Given Mashreq's discussion of these statements in its complaint, (*see, e.g.*, ¶¶ 6, 60, 88, 90, 91), Mashreq cannot plausibly characterize such statements as "extrinsic evidence," (Opp'n 12–14).

provided the security descriptions "in an unabbreviated form" in its account statement—thereby defeating its own argument that it was misled because the securities appeared in abbreviated fashion elsewhere in these same documents.  (Opp'n 13.)[12]

Furthermore, Mashreq's assertion that it has stated a viable fraud claim because it has alleged that Defendants would "adhere to Mashreq's admonitions prohibiting the purchase of CDOs, CBOs and CLOs," (Opp'n 21), is unavailing.  This allegation suggests only that Defendants made false promises to perform under the Investment Agreement, but such false promises cannot sustain an independent fraud claim.  *See First Bank of the Americas* v. *Motor Car Funding, Inc.*, 690 N.Y.S.2d 17, 20–21 (1st Dep't 1999).  Moreover, to the extent this allegation merely reiterates Mashreq's contention that the Investment Guidelines did not permit Defendants to purchase CDOs, CBOs and CLOs, it fails to raise a plausible inference of fraud because the Investment Guidelines, on their face, permitted the purchase of such securities.  *Cf. Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  Indeed, Mashreq's contention regarding the permissibility of CDOs and CLOs—which derives from an August 29, 2007 email sent by one of Mashreq's employees shortly after the dispute regarding the Investment Guidelines arose—offers nothing more than Mashreq's self-serving interpretation of those guidelines.  The law is clear, however, that the interpretation of a contract is not a statement of fact, but a legal conclusion.  *See Yakin* v. *Tyler Hill Corp.*, 566 F.3d 72, 75 (2d Cir. 2009).  And it is equally well established that "the tenet that a court must accept as true all of the allegations contained in a complaint is

---

[12]   In any event, Mashreq's argument that ING "took pains" to abbreviate the security descriptions is belied by the fact that the account statements merely reprinted, verbatim, the abbreviated security descriptions provided on Bloomberg.

inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

*Second*, Mashreq has failed to allege scienter.  Mashreq does not even respond to Defendants' argument that it must allege more than a generic desire for high compensation.  (Br. 20.)  Instead, Mashreq improperly attempts to shift the burden to Defendants to "suggest an alternate inference about what could possibly explain its conduct."  (Opp'n 23.)  But that is not the law.  Rather, it is Mashreq that must "plead circumstances that give rise to a strong inference of fraudulent intent by alleging either motive and opportunity to commit fraud or facts that constitute strong circumstantial evidence of fraudulent behavior or recklessness." *Bank* v. *Brooklyn Law Sch.*, No. 97 Civ. 7470 (JG), 2000 WL 1692844, at \*7 (E.D.N.Y. Oct. 6, 2000) (internal quotation omitted).  Because it has failed to do so, its fraud claim must be dismissed.

## V.     THE COMPLAINT SHOULD BE DISMISSED AS AGAINST DEFENDANT RICHARD KILBRIDE

Similarly, Mashreq's complaint fails to make allegations of fraud concerning Defendant Kilbride that comport with Rule 9(b).  In a futile attempt to rehabilitate its deficient claim against Kilbride, Mashreq lists six acts that it asserts give rise to a plausible fraud claim. (Opp'n 24.)   None remotely suffices.   Kilbride's "fraud," according to Mashreq, was his signature on the revised Investment Guidelines, his service as a portfolio manager, and his status as a supervisor of the account.  But, these acts are not remotely suggestive of fraud; they are merely descriptions of his role in managing Mashreq's account.   Mashreq also claims that Kilbride committed fraud by simply being present at a November 2006 meeting during which CDOs, CBOs, and CLOs were discussed and by participating in other conference calls and email exchanges.  But if mere presence cannot give rise to liability for aiding and abetting fraud, *see, e.g.*, *JP Morgan Chase Bank* v. *Winnick*, 406 F. Supp. 2d 247, 258 (S.D.N.Y. 2005), it certainly cannot sustain liability for a primary fraud violation.

8

Mashreq further argues that Kilbride's alleged fraud is evidenced by certain "Portfolio Manager's Notes" attached to Defendants' motion. But even if these documents may be considered, *but see Torchlight Loan Servs., LLC* v. *Column Fin., Inc.*, No. 11 Civ. 7426 (RWS), 2012 WL 3065929, at *12 (S.D.N.Y. July 25, 2012), Mashreq does not identify *any* allegedly fraudulent statements in those documents. This plainly does not satisfy Rule 9(b). *See Lerner* v. *Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) ("[I]n order to comply with Rule 9(b), the complaint must . . . specify the statements that the plaintiff contends were fraudulent . . . ." (internal quotation omitted)). The fraud claim as to Kilbride therefore should be dismissed.

## VI.   MASHREQ'S BREACH OF FIDUCIARY DUTY AND FRAUD CLAIMS ARE DUPLICATIVE OF MASHREQ'S BREACH OF CONTRACT CLAIM

In response to Defendants' argument that Mashreq's fiduciary duty and fraud claims are duplicative of its contract claim, and therefore subject to dismissal, Mashreq baldly asserts that those claims are sufficiently independent of one another because they supposedly rely on "sufficiently distinct facts." (Opp'n 20.) But Mashreq does not actually point to any facts in its complaint that are different for these claims, and it cannot do so. A simple comparison of the Complaint's allegations underpinning the fiduciary duty and fraud claims with those of the contract claim makes plain that they are one and the same. (*See* ¶¶ 144(a)–(g) (fraud); ¶¶ 157(i)–(vii) (contract); ¶¶ 164(i)–(vi), 167(b) (fiduciary duty).)

Indeed, the inconsistency in Mashreq's own arguments only further demonstrates the incurable defects in its fiduciary duty and fraud claims. On the one hand, Mashreq claims, in connection with its statute of limitations argument, that "all claims in the Complaint arise from the contractual relationship between commercial parties." (Opp'n 16.) In fact, Mashreq's own expert states that, "but for the [Investment Agreement], there would be no breach of fiduciary duty" and that Mashreq's fraud claim "would not exist as a stand-alone claim without the

[Investment Agreement]."  (Al Obeidli Decl. ¶¶ 8–9.)  But elsewhere in its brief, Mashreq nonetheless argues that its fiduciary duty and fraud claims are *not* duplicative of its breach of contract claim because ING "owed Mashreq a fiduciary duty that was distinct from the requirement that ING abide by the provisions of the [Investment Agreement]" and because a "knowing breach of fiduciary duty may also . . . amount to a fraud."  (Opp'n 19–20.)  Mashreq cannot have it both ways.  Either its breach of fiduciary duty and fraud claims arise from the parties' contract, in which case they are duplicative of the contract claim, or they are distinct from the contract claim, in which case they are subject to the UAE's three-year statute of limitations.  One way or the other, Mashreq's doublespeak is fatal to these claims.

## VII.   MASHREQ'S DEMAND FOR PUNITIVE DAMAGES SHOULD BE STRICKEN

Mashreq argues that striking its punitive damages demand would be "premature." (Opp'n 24.)  But courts routinely strike demands for punitive damages at the motion-to-dismiss stage.[13]  Although all of Mashreq's claims should be dismissed, if Mashreq's breach of fiduciary duty and fraud claim are dismissed, its demand for punitive damages cannot stand.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to dismiss Mashreq's claims with prejudice.[14]

---

[13]   *See, e.g.*, *Citibank, N.A.* v. *Itochu Int'l, Inc.*, No. 01 Civ. 6007 (GBD), 2003 WL 1797847, at *5 (S.D.N.Y. Apr. 4, 2003).

[14]   In its opposition brief, Mashreq seeks permission to amend its complaint to the extent the Court identifies deficiencies in it.  (Opp'n 25.)  Mashreq is not entitled to such an advisory opinion.  Indeed, Mashreq overlooks Section III.C.2. of the Court's Individual Rules and Procedures, which states:  "If a motion to dismiss is filed, the plaintiff has a right to amend its complaint, pursuant to Fed. R. Civ. P. 15(a)(1)(B), within 21 days.  If the plaintiff elects not to amend its complaint, no further opportunity to amend will be granted and the motion to dismiss will proceed in the normal course."  As Mashreq failed to amend its complaint within the time allotted, its belated request to amend should be denied.

Dated: July 19, 2013
New York, New York

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP


By: _____s/  Daniel J. Toal_____
    Brad S. Karp
    Daniel J. Toal
    Liza M. Velazquez
    Gregory F. Laufer

1285 Avenue of the Americas
New York, New York 10019-6064
Tel. (212) 373-3000
Fax (212) 757-3980
bkarp@paulweiss.com
dtoal@paulweiss.com
lvelazquez@paulweiss.com
glaufer@paulweiss.com

*Attorneys for Defendants.*