USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/25/2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                               :
MASHREQBANK, PSC,                           :
                             Plaintiff,   :
                                              :    13 Civ. 2318 (LGS)
             -against-                    :
                                              :    OPINION AND
ING GROUP N.V., *et al.*,                :    ORDER
                             Defendants.  :
                                              :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

       Plaintiff MashreqBank, psc ("Mashreq" or "Plaintiff") brings claims for breach of contract and breach of fiduciary duty against Defendant ING Investment Management Co. ("ING") and for common law fraud against ING and ING employee Richard Kilbride (together, "Defendants"). These claims arise from disputes regarding a 2005 Investment Management Agreement between Mashreq and ING ("Agreement") and amendments to the Agreement made in 2007 ("Revised Guidelines"), both of which are attached to Plaintiff's Complaint.

       Defendants move to dismiss all claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, Defendants' motion is granted in part and denied in part.

    **I.**    **Facts**

       The facts are taken from Plaintiff's Complaint. Mashreq provides banking and financial services and is based in the United Arab Emirates. ING manages investments for both individual and institutional investors and is based in the United States. During

the relevant time period, Richard Kilbride was Head of Fixed Income for Managed Accounts for ING and signed the Agreement on behalf of ING.

On February 28, 2005, Mashreq and ING entered into the Agreement, which provided ING discretion and authority to manage Mashreq's investment account subject to accompanying investment guidelines ("Guidelines").  Mashreq's account was known as an "ING Intermediate Fixed Income Separately Managed Account," which Mashreq alleges ING marketed as a "safe 'boring' portfolio of well-researched investment-grade fixed-income investments."  The Agreement allowed Mashreq to terminate its account with ING upon thirty days notice.  The Agreement also allowed the Guidelines to be revised, and the first revision occurred on May 28, 2005, in order to "clarif[y]" and "refine[]" the Guidelines.

On November 2, 2006, Mashreq met with ING in New York to discuss and view a presentation concerning ING's proposals to revise the Guidelines further.  Mashreq alleges that the presentation demonstrated an "investment philosophy that emphasized minimizing risk through superior research," leaving Mashreq with the impression that ING had "an extremely sophisticated and sensitive approach to risk management."  The presentation also included ING's proposed modifications to the Guidelines, which included, among other things, "expressly allowing CDO's, CBO's[,] CLO's and other structured products."  Mashreq accepted some of ING's proposals and rejected others, including "promptly and clearly" rejecting ING's proposal to "allow CDOs, CBOs, CLOs, and other structured products."  Mashreq and ING negotiated the revisions and exchanged drafts for two months.

On February 5, 2007, Mashreq and ING executed the Revised Guidelines. The Revised Guidelines do not mention CDOs, CBOs or CLOs. Mashreq alleges that the Revised Guidelines prohibited CDOs, CBOs and CLOs because they are not included in the list of "Permitted Securities." The Revised Guidelines remove the words "other structured notes" from the description of "Permitted Securities," add the words "subordinated bank debt" to the description of "Prohibited Investments" and maintain the requirement that all securities be investment-grade. Mashreq alleges that, if the Agreement had allowed CDOs, CBOs and CLOs, or if the Agreement had allowed non-investment-grade securities, Mashreq would have pulled its money from ING's management. At this time, Mashreq had $108 million under ING's management.

Mashreq alleges that the Revised Guidelines were "nothing more than trickery designed to convince Mashreq to keep its money with ING" and that "ING never intended to abide by the [Revised Guidelines]." Mashreq further alleges that between February and July 2007, ING invested 70% of Mashreq's money, or $73 million, in securities that were "toxic," "illiquid," "below investment-grade" and "blatantly violated the [Agreement and Revised Guidelines] in at least seven ways." Mashreq also alleges that the securities at issue were "rife with multiple layers of serious conflicts of interest" and contained other "red flags," such as the absence of an independent auditor or accountant and "layers of large outright fees."

On July 31, 2007, Mashreq participated in a conference call with ING during which Mashreq discovered that eleven securities listed as asset-backed securities were CDOs/CBOs. Mashreq alleges that when it confronted Defendants about the securities at issue, Defendants assured Mashreq that "even though valuations were tough in the

3

current market," the investments were "money good." Mashreq alleges that Defendants actually had no way of valuing the securities at issue. Mashreq further alleges that it requested more information from Defendants and did not receive it, leading Mashreq to believe Defendants had done no research and had very little information about the securities.

None of the eleven securities at issue was registered with the SEC, all were issued by shell corporations, and none of their offering circulars was publicly available. Mashreq alleges that it was very difficult for it to identify and trace these securities in order to conduct research. Mashreq alleges that ING hid these securities from Mashreq by, among other things, withholding requested information, categorizing the securities as asset-backed securities and "intermingl[ing]" them in portfolio reports with well-known, respectable securities.

On August 24, 2007, ING sent Mashreq an email, which is attached to Plaintiff's Complaint, stating that it "believes that the [Revised Guidelines] do permit CDOs/CLOs." On August 29, 2007, Mashreq sent ING a response, which is also attached to Plaintiff's Complaint, reminding ING of Mashreq's position taken during negotiations that CDOs/CLOs would not be permissible. On September 16, 2007, Mashreq received another email from ING, which is also attached to Plaintiff's Complaint, asserting that ING believed the Revised Guidelines to allow CDOs, relying on the "deletion of the prohibition on embedded leverage" and the facts that the Revised Guidelines allowed investment in asset-backed securities and did not list CDOs as "Prohibited Investments," and claiming that Defendants did not remember any conversation with Mashreq about CDOs during negotiations.

On December 14, 2007, Defendants offered to buy back two of the eleven securities at issue in exchange for a release. Mashreq declined this offer and was able to mitigate its alleged initial damages of $60 to $70 million, ultimately suffering an alleged $43 million in damages from losses attributable to the eleven securities at issue.

The Complaint was filed April 8, 2013, and asserts claims for breach of contract and breach of fiduciary duty against ING and its parent corporation, ING Groep N.V. ("ING Groep"), and common law fraud against ING, ING Groep, and ING employee Richard Kilbride. On May 21, 2013, Mashreq and ING Groep agreed to the dismissal of ING Groep, which the Court approved on May 22, 2013.

## II.   Standard of Review

On a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *See Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). The Court may consider, in addition to the allegations contained in the complaint, "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004).

To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* While "'detailed factual allegations'" are not necessary, the pleading must be supported by more than mere "'labels and conclusions'

or 'formulaic recitation[s] of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Rule 8 of the Federal Rules of Civil Procedure "requires factual allegations that are sufficient to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 846 (2013) (quoting *Twombly*, 550 U.S. at 555). Moreover, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal punctuation omitted); *see also* Fed. R. Civ. P. 8(a)(2).

### III. Discussion

#### A. Breach of Contract

Defendants make two arguments to support the dismissal of Plaintiff's breach of contract claim. First, Defendants argue that this claim is "time-barred because Mashreq failed timely to object to the challenged securities' purchases, as required by the express terms of the [Agreement]." This argument fails.

Defendants point to section 2(d) of the Agreement, which states, "All transactions effected for the Account will be deemed to be in compliance with the Investment Guidelines unless written notice to the contrary is received by [ING] from Client within 30 days following first issue of the periodic report containing such transactions." Defendants argue that this provision creates a 30-day limitation period after which Mashreq is barred from bringing any judicial claims relating to the securities at issue.

Under New York law, parties may agree in writing to a shortened limitation period, provided the period is reasonable. N.Y. C.P.L.R. § 201; *Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.*, 915 N.Y.S.2d 7, 15 (1st Dep't 2010), *aff'd*, 962 N.E.2d 765 (N.Y. 2011). The Court does not have to decide whether a 30-day limitation period is reasonable in this case because the plain language of section 2(d) of the Agreement does not evidence an agreement between the parties to create a shortened limitation period.

The cases relied on by Defendants concern contract provisions that are explicit in their intent to create limitation periods. In *Assured Guaranty*, the provision at issue stated, "Except with respect to any act or transaction . . . as to which Client shall object in writing . . . within a period of ninety (90) days . . . Investment Advisor . . . shall upon the expiration of such period be *released* and *discharged* from any *liability* or *accountability*." First Amended Complaint, Ex. A, *Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.*, 958 N.Y.S.2d 59 (N.Y. Sup. Ct. 2009) (No. 603755/08) (emphasis added). In *Kingsley Arms*, the provision at issue stated, "*[c]laims* by either party must be made within 21 days after occurrence of the event giving rise to such *[c]laim* or within 21 days after the claimant first recognizes the condition giving rise to the *[c]laim*, whichever is later"). *Kingsley Arms, Inc. v. Sano Rubin Constr. Co.*, 791 N.Y.S.2d 196, 197 (3d Dep't 2005) (alterations in original) (emphasis added).

Section 2(d) of the Agreement, on the other hand, does not contain any language concerning the bringing of claims or the filing of lawsuits. It does not include any release language. Moreover, it is found in the section of the Agreement titled "Discretionary Management Powers," not in the section concerning liability. It states that the securities

7

"will be deemed to be in compliance," but does not specify by whom or what the consequences of that shall be.  Therefore, section 2(d) of the Agreement is not a statute of limitations under N.Y. C.P.L.R. § 201.  Mashreq filed its breach of contract claim well within the applicable six-year limitation period under New York law.  N.Y. C.P.L.R. § 213.

Second, Defendants argue that Plaintiff "fails plausibly to allege a breach" because the Revised Guidelines "plainly permitted the purchases . . . at issue."  This argument also fails.  To state a claim for breach of contract, a party must allege: (1) the existence of a contract, (2) performance of the contract by that party, (3) breach of the contract by the other party and (4) damages as a result of the breach.  *See First Investors Corp. v. Liberty Mut. Ins. Corp.*, 152 F.3d 162, 168 (2d Cir. 1998).  Mashreq has alleged in detail all of these elements.

Mashreq's claim for breach of contract is plausible based on the facts alleged, and there is nothing in the plain language of the Agreement or the Revised Guidelines that negates this plausibility as a matter of law.  Accordingly, Defendants' motion to dismiss Plaintiff's claim for breach of contract is denied.

### B. Breach of Fiduciary Duty and Common Law Fraud

"Under New York law, when a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual; attempts to repackage them as sounding in fraud . . . and other torts . . . are generally precluded, unless based on a duty independent of the contract."  *Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*, 449 F. App'x 57, 59 (2d Cir. 2011) (citing, *inter alia*, *Baker v. Norman*, 643 N.Y.S.2d 30, 33 (1st Dep't 1996) (denying a claim for fraud as a

repackaged contractual claim)).  Because Plaintiff's claims for breach of fiduciary duty and fraud are duplicative of its claim for breach of contract, Defendants' motion to dismiss the claims for breach of fiduciary duty and fraud is granted.

  **i.**  **Breach of Fiduciary Duty**

"A cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand." *William Kaufman Org., Ltd. v. Graham & James LLP*, 703 N.Y.S.2d 439, 442 (1st Dep't 2000).  In order to survive a motion to dismiss, a claim for breach of fiduciary duty must "'set[] forth allegations that, *apart from the terms of the contract*,' the parties 'created a relationship of higher trust than would arise from [their contracts] alone.'" *Brooks v. Key Trust Co. Nat. Ass'n*, 809 N.Y.S.2d 270, 272-73 (3d Dep't. 2006) (alterations in original) (quoting *EBC I, Inc. v. Goldman, Sachs & Co.*, 832 N.E. 2d 26, 31 (N.Y. 2005)) (internal citation omitted).

Here, the Complaint alleges that Defendants' role as "financial advisor[s] with discretionary authority to manage [its] investment accounts created a fiduciary duty." *Id.* at 272.  However, the Complaint does not allege a fiduciary duty apart from the Agreement and Revised Guidelines.  Mashreq's Complaint alleges that "*[b]y entering into the [Agreement]*" Defendants "undertook to act as an agent and fiduciary" for Mashreq.

Moreover, Mashreq's breach of fiduciary duty claim is "based upon the same facts and theories" as its breach of contract claim and comprised of allegations "either expressly raised in plaintiff's breach of contract claim or encompassed within the contractual relationship by the requirement implicit in all contracts of fair dealings and

9

good faith." *Id*. Accordingly, Plaintiff's claim for breach of fiduciary duty is dismissed as duplicative.

### ii. Fraud

A complaint "fails to support a claim of fraud under New York law" where the fraud claim is "duplicative of the breach of contract claim." *Guilbert v. Gardner*, 480 F.3d 140, 148 (2d. Cir. 2007). A claim for fraud cannot survive where it "arises out of the identical facts and circumstances, and even contains the same allegations, as the cause of action alleging breach of contract." *34-35th Corp. v. 1-10 Indus. Assocs., LLC*, 768 N.Y.S.2d 644, 644 (2d Dep't. 2003).

In order for a fraud claim to survive, it must "'(i) demonstrate a legal duty separate from the duty to perform under the contract, or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract, or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.'" *Guilbert*, 480 F.3d at 148 (quoting *Bridgestone/Firestone v. Recovery Credit Serv. Inc.*, 98 F.3d 13, 20 (2d Cir. 1996)). The Complaint does not allege any of these criteria. First, as discussed above, any legal duty Defendants owed Mashreq by virtue of being its investment advisors is also encompassed by the obligations in the Agreement and Revised Guidelines.

Second, the Complaint does not allege misrepresentations collateral or extraneous to the contracts between Mashreq and ING. To the contrary, the Complaint alleges that "Defendants made materially false and misleading affirmative representations and omissions to Mashreq *in the [Revised Guidelines]*." All of the fraud allegations are tied to the contracts between the parties, and the core of these allegations actually repeat the

10

substance of the breach of contract allegations.  This is fatal to Mashreq's fraud claim, as "a fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006).

Finally, the Complaint does not allege any damages attributable to Defendants' alleged fraud that are not also attributable to Defendants' alleged breach of contract.  The Complaint alleges $43,623,755 in losses that Mashreq suffered from Defendants' alleged improper investing, which is the basis for the breach of contract claim.  The Complaint also pleads the same losses of "approximately $43 million" as a result of Defendants' alleged fraud.  While Mashreq does request punitive damages, this does not suffice to sustain a fraud claim where "the alleged misrepresentations did not result in any loss independent of the damages allegedly incurred for breach of contract."  *Church of South India Malayalam Congregation of Greater New York v. Bryant Installations, Inc.*, 925 N.Y.S.2d 131, 132 (2d Dep't. 2011).

Plaintiff argues that its causes of action for fraud and breach of contract should be able to stand together because Defendants' misrepresentations fraudulently induced Plaintiff to enter into the Revised Guidelines.  While a claim for fraudulent inducement "is separate and distinct from a breach of contract claim under New York law," the law "distinguishes between a promissory statement of what will be done in the future that gives rise only to a breach of contract cause of action and a misrepresentation of a present fact that gives rise to a separate cause of action for fraudulent inducement."  *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir. 2007).

Here, the Complaint does not plead facts sufficient to support a fraudulent inducement claim separate from a breach of contract claim.  Mashreq alleges Defendants

fraudulently induced it to enter into the Revised Guidelines by making promises they had no intention of keeping, such as "investment guidelines to which they would adhere" and "types of securities in which they would invest" and "not invest." Mashreq in short alleges that Defendants "never intended to comply" with the Revised Guidelines.

However, "under New York law, where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract." *Telecom Intern. America, Ltd. v. AT & T Corp.*, 280 F.3d 175, 196 (2d. Cir. 2001) (internal quotations omitted). "In other words, simply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder, is insufficient to state an independent tort claim." *Id.*; *accord Wall*, 471 F.3d at 416. Accordingly, Plaintiff's claim for fraud is dismissed as duplicative.

### iii. Punitive Damages

Punitive damages generally are not available for breach of contract under New York law. *U.S. for Use and Benefit of Evergreen Pipeline Const. Co., Inc. v. Merritt Meridian Const. Corp.*, 95 F.3d 153, 160 (2d. Cir. 1996). In order to recover punitive damages, the breach must involve "a fraud evincing a 'high degree of moral turpitude' and demonstrating 'such wanton dishonesty as to imply a criminal indifference to civil obligations,'" as well as be "'*aimed at the public generally*.'" *Id.* (quoting *Rocanova v. Equitable Life Assur. Soc. of U.S.*, 634 N.E.2d 940, 943-44 (N.Y. 1994)); *accord New York Marine & General Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112, 130 (2d Cir. 2001).

The Complaint does not allege that Defendants' conduct was aimed at or harmed the general public, and the allegations by their nature do not suggest any public harm. Thus, Plaintiff is precluded from recovering punitive damages for its breach of contract claim as a matter of law.  As breach of contract is Plaintiff's only remaining cause of action in this case, Defendants' motion to strike Plaintiff's demand for punitive damages is granted.

**IV.    Conclusion**

Defendants' motion to dismiss is DENIED with respect to Plaintiff's breach of contract claim and GRANTED with respect to Plaintiff's breach of fiduciary duty and fraud claims, and Plaintiff's demand for punitive damages is stricken.

SO ORDERED.

October 25, 2013

New York, NY

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE